McALESTER FUEL COMPANY, Appellant,

v.

SMITH INTERNATIONAL, INC., Appellee.

No. 01–05–00468–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 26, 2007.

David A. Furlow, Stacy L. Kelly, Grant Cook, Thompson & Knight L.L.P, Kenny Corley, Three Allen Center, Houston, TX, for Appellant.

Stacy R. Openhaus, Gardere Wynne Sewell LLP, Dallas, TX, Geoffrey H. Bracken, Gardere Wynne Sewell, L.L.P., Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

In two issues, appellant, McAlester Fuel Company ("McAlester"), challenges a final judgment rendered in favor of appellee, Smith International, Inc. ("Smith").

We affirm.

## Factual History

McAlester, an oil and gas company, contacted Smith to determine whether Smith could provide "sidetrack" drilling services on an offshore oil and gas well. In response, Smith e-mailed price quotes for three different drilling methods to McAlester. These price quotes were contained in documents attached to the e-mail. On each of these attached documents was the following notation: "TERMS & CONDITIONS: The above quotation/proposal is made subject to our 'Terms and Conditions' applicable to the goods and/or services referred to herein (a copy of which is available upon request at 281–443–3370, attention Legal Department)."

Following a meeting between McAlester and Smith representatives, McAlester orally retained Smith to sidetrack through the double-string casing that sheathed the well at its deepest point. No written contract was signed before the drilling began.

Smith made two attempts at sidetracking the well through the double-string casing without success. During each of these attempts, the milling tool used to drill through the double-string casing broke. On its third attempt, Smith successfully sidetracked the well by drilling higher up through a single string of casing. After the sidetracking operation was completed, Smith presented job tickets to Louis Ebrom, McAlester's "company man," who signed them.

The front side of the job tickets detailed the tools and services provided by Smith for the sidetracking operation and estimated the operation's cost. Above the signature line was the notation that the Smith's goods and services "are provided subject to the terms and conditions on the reverse side" of the job ticket and in Smith's "price list and/or price book."

The terms and conditions on the back side of the job tickets made clear that McAlester, not Smith, bore the risks of the operation and would be responsible for any damages arising from it. Relatedly, the terms and conditions expressly limited Smith's liability, providing, in part, that "SMITH SHALL IN NO EVENT BE LIABLE FOR SPECIAL, INDIRECT, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES OR CONTINGENT LIABILITIES ARISING OUT OF THIS AGREEMENT OR TO THE FAILURE OF ANY GOODS TO OPERATE PROPERLY...." The backside of the job ticket also contained an indemnity clause providing that McAlester would "PROTECT, INDEMNIFY, HOLD HARMLESS AND DEFEND SMITH FROM AND AGAINST ANY CLAIMS, DEMANDS, LIENS, DAMAGES, CAUSES OF ACTION, JUDGMENTS, LOSSES AND LIABILITIES OF ANY NATURE WHATSOEVER" arising from the operation.

Smith invoiced McAlester for $298,415 relating to the sidetracking operation. McAlester not only refused to pay but sent Smith a demand letter claiming that Smith owed it "$539,511 to reimburse [McAlester] for additional expenses incurred by McAlester as the result of the failures of the Smith tools."

## Procedural History

McAlester sued Smith for breach of contract, negligence, negligent misrepresentation, and violation of the Texas Deceptive

Trade Practices Act ("DTPA"). McAlester alleged that Smith's failed attempts to sidetrack the well had caused McAlester to incur actual damages of $539,511. Smith counterclaimed, alleging breach of contract and seeking $298,415 for performing the sidetracking operation. As part of its counterclaim, Smith also sought a declaratory judgment, requesting a declaration that McAlester's claims were limited or barred by the terms and conditions of the parties' agreement.

Smith also filed a motion for summary judgment, asserting that McAlester's claims were barred as a matter of law by the terms and conditions found in the job tickets signed by Ebrom and by the terms and conditions referenced in the price-quotation documents attached to Smith's e-mail proposal. The trial court granted Smith's motion for summary judgment, ordering that McAlester take nothing on its breach of contract, negligence, negligent misrepresentation, and DTPA claims.

Before the trial court granted Smith's motion for summary judgment, McAlester amended its petition to include a claim for fraudulent inducement. Smith in turn filed a motion for partial summary judgment regarding McAlester's fraudulent inducement claim, which the trial court denied.

Smith's counterclaim for breach of contract, and McAlester's fraudulent inducement claim were tried to a jury. The jury found against McAlester on its fraudulent inducement claim and in favor of Smith on its breach of contract counterclaim. For the breach, the jury determined that Smith was entitled to $298,600 in damages from McAlester. The jury was also asked, "Did Smith fail to comply with its warranty that the tools used at the Well were free from defects in materials and workmanship?" The jury responded in the affirmative but in the next question found that

McAlester was entitled to zero dollars in damages for Smith's failure to comply with the warranty.

The trial court signed a "Final Judgment" which provided, in relevant part, as follows:

At the conclusion of the evidence, the Court submitted the questions of fact in the case to the jury. The charge of the court and the verdict of the jury are incorporated for all purposes by reference. Because it appears to the Court that the verdict of the jury was in favor of Smith and against McAlester, judgment should be rendered on the verdict in favor of Smith and against McAlester.

The Court, after taking judicial notice of its file (including its Order on Defendant's Motion for Summary Judgment [signed November 29, 2004] and its Order [signed March 7, 2005]) and considering the evidence, stipulations, and jury answers, is of the opinion that McAlester should take nothing by this suit and that Smith should recover damages from McAlester.

The Court finds and declares that, based upon the jury's answers and testimony and other evidence admitted at trial (including 'Terms and Conditions' stated in the price book, job tickets, and invoices), that all services rendered, equipment used, and tools run downhole by Smith on the North Hell Hole Bayou Prospect, S.L. 16141 # 2 Sidetrack Well were at McAlester's sole risk and McAlester agreed to defend and hold harmless from all losses and liabilities, causes of action, and claims in this case relating to the sidetracking operations and to release Smith from its claims asserted in this case....

In the decretal portions of the judgment, the trial court ordered that McAlester take nothing from Smith on its claims and awarded Smith $298,600 in damages plus

attorney's fees. On appeal, McAlester challenges the judgment by raising two issues.

### Declaration Renders Any Summary Judgment Error Harmless

McAlester first assails the portion of the judgment incorporating the summary judgment on McAlester's breach of contract, negligence, negligent misrepresentation, and DTPA claims. Raising a number of sub-points, McAlester asserts that "genuine issues of disputed material fact" existed regarding whether McAlester had agreed to the exculpatory "terms and conditions," which relieved Smith from liability. In its second issue, McAlester challenges the remainder of the judgment by contending that the summary-judgment ruling "precluded McAlester's claims and defenses from being heard by the jury and resulted in a damages and attorney's fee award that must be reversed because Smith will not be the prevailing party after reversal."

In response, Smith contends that the declaration in the trial court's judgment that the sidetracking operation was performed at "McAlester's sole risk and McAlester agreed to defend and hold harmless from all losses and liabilities, causes of action, and claims in this case relating to the sidetracking operations and to release Smith from its claims" rendered harmless any error committed by the trial court in granting Smith's motion for summary judgment. We agree. The Supreme Court of Texas has twice held, under diverse circumstances, that a trial court's erroneous decision to grant summary judgment can be rendered harmless by subsequent events in the trial court. *See Progressive County Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 921 (Tex.2005) (concluding that any error committed by granting summary judgment on insurance bad-faith and extra-contractual claims was harmless because jury's finding in subsequent proceeding negated coverage, which was prerequisite for asserting bad-faith and extra-contractual claims); *Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 359 (Tex.1998) (holding that trial court rendered any error arising from its failure to give notice of submission date for motion for summary judgment harmless when it considered nonmovant's response and reconfirmed its prior ruling on the motion).[1]

To merit reversal of the judgment, McAlester must show that the trial court's grant of the motion for partial summary judgment on its breach of contract, negligence, negligent misrepresentation, and DTPA claims was harmful. *See* Tex.R.App. P. 44.1(a). This it has not done. The declaratory language in the trial court's judgment indicates that the issue of whether Smith was shielded from liability, under the "terms and conditions" language relied on by Smith, was fully litigated in the trial

---

1. McAlester contends that the underlying events of *Progressive County Mutual Insurance* and *Martin* are factually and procedurally distinguishable from the instant case and thus the harm analysis utilized in those cases does not apply. However, the supreme court has not indicated that the harm analysis applied in *Progressive County Mutual Insurance* and *Martin* is limited to cases factually and procedurally the same as those. The *Progressive County Mutual Insurance* court began its analysis by citing *Martin* for the general proposition that a trial court's erroneous decision to grant summary judgment can be rendered harmless by subsequent events in the trial court. *See Progressive County Mut. Ins. Co. v. Boyd,* 177 S.W.3d 919, 921 (Tex.2005). We note that the factual and procedural histories underlying *Progressive County Mutual Insurance* and *Martin* were themselves quite distinct. The supreme court in *Progressive County Mutual Insurance* nonetheless relied on *Martin.*

court independently of the grant of the motion for partial summary judgment. On appeal, McAlester does not successfully show the contrary.

 McAlester focuses its opening brief primarily on establishing that the trial court erred in granting the motion for partial summary judgment on its breach of contract, negligence, negligent misrepresentation, and DTPA claims. Though its second issue globally asserts that the remainder of the judgment must also be reversed, McAlester directed no argument specifically at the declaratory judgment portion of the judgment in its opening brief. Rather, the lion's share of McAlester's contentions to defeat the declaratory judgment were raised in its reply brief and go beyond merely responding to the assertions of Smith made in its appellee's brief. *See* TEX.R.APP. P. 38.3. An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court. *See N.P. v. Methodist Hosp.*, 190 S.W.3d 217, 225 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Zamarron v. Shinko Wire Co.*, 125 S.W.3d 132, 139 (Tex.App.-Houston [1st Dist.] 2003, pet. denied); *Lopez v. Montemayor*, 131 S.W.3d 54, 61 (Tex.App.-San Antonio 2003, pet. denied); *cf. Hutchison v. Pharris*, 158 S.W.3d 554, 564 (Tex.App.-Fort Worth 2005, no pet.) (considering issue raised for first time in reply brief because appellee "fully argued" the issue in its response brief and appellants merely replied). Accordingly, we address only those contentions asserted in the reply brief that can be construed to expound on McAlester's second issue presented in its opening brief or that reply to issues fully briefed by Smith.[2]

McAlester argues that the trial court considered its grant of the partial summary judgment when it declared that Smith was protected from liability for

---

2. McAlester contends for the first time in its reply brief that "a declaratory judgment is unavailable to resolve issues already pending before a trial court in a party's claims or affirmative defenses." Even if McAlester had presented this contention in its opening brief, it would not have succeeded. McAlester filed no special exceptions and made no objection in the trial court that Smith's declaratory judgment claim would be improper for the reason now claimed. If a party does not specially except or otherwise make the trial court aware of a complaint that a declaratory judgment action is improper prior to the trial judge signing the judgment, the party fails to preserve that complaint for appeal. *Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Commc'ns Corp.*, 49 S.W.3d 520, 534 (Tex.App.-Corpus Christi 2001, pet. denied); *Gulf Ins. Co. v. Vantage Props.*, 858 S.W.2d 52, 55 (Tex.App.-Houston [14th Dist.] 1993, writ denied). McAlester also raised for the first time in its reply brief the contention that it did not have notice of the exculpatory language found in the "terms and conditions," arguing that such language was not conspicuous. McAlester relies on *Dresser Industries, Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505 (Tex.1993) for the proposition that the exculpatory "terms and conditions" at issue did not meet the "fair notice requirements" discussed in *Dresser*. McAlester further contends in its reply brief that, at a minimum, the exculpatory language of the "terms and conditions" could not have served to waive its DTPA claim. Specifically, McAlester contends that the exculpatory language at issue does not comply with DTPA section 17.42 to constitute a valid waiver and release of the act's protections. *See* TEX. BUS. & COM.CODE ANN. § 17.42 (Vernon 2002) ("Any waiver by a consumer of the provisions of this subchapter is contrary to public policy and is unenforceable and void" unless certain enumerated requirements are satisfied). Though both arguments regarding the inadequacy of the exculpatory provisions were briefed in McAlester's opening brief and in Smith's responsive brief in the context of challenging the trial court's grant of the partial summary judgment, such arguments appear with respect to the declaratory judgment only in McAlester's reply brief. Thus, we do not consider either as a basis to reverse the declaratory judgment.

McAlester's claims. McAlester points to the language of the judgment reciting that the trial court took judicial notice of its file, including the order granting the motion for summary judgment. Despite this recitation, there is no indication that the trial court relied on its grant of the motion for summary judgment when it determined the declaratory judgment claim. To the contrary, the judgment provides that the trial court determined the declaratory judgment claim "based upon the jury's answers and testimony and other evidence admitted at trial (including 'Terms and Conditions' stated in the price book, job tickets, and invoices)." *Cf. General Star Indem. Co. v. Spring Creek Vill. Apartments Phase V, Inc.,* 152 S.W.3d 733, 738 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (reversing and remanding entirety of trial court's judgment, including breach of contract issue tried to jury, because "jury trial on breach of contract was premised on the summary judgment that the appraisal award was binding and Spring Creek was entitled to recover more than $1 million").

Acknowledging that the trial court relied on the jury's answers, in part, to determine the declaratory judgment claim, McAlester also challenges the declaratory judgment by arguing that the jury was presented with a "one-sided case." McAlester contends that the case presented to the jury presumed that McAlester had agreed to the "terms and conditions" that limited Smith's liability. As support, McAlester cites the jury question on Smith's breach of contract counterclaim, which asked as follows: "Did [McAlester] fail to comply with the agreement to pay [Smith] for the sidetracking services to be performed?" While it shows a presumption that an agreement existed between McAlester and Smith regarding payment of the sidetracking services, the jury question does not show that a presumption

existed that McAlester had agreed to the exculpatory "terms and conditions," which shielded Smith from liability.

McAlester correctly points out that "the jury did not answer issues regarding waiver and release." Nevertheless, McAlester's point is irrelevant unless it shows that, after the evidence was presented at trial, issues of fact remained to be decided by the jury before the trial court could determine the declaratory judgment claim. McAlester makes no such showing.

In sum, McAlester has not shown that the declaratory judgment portion of the final judgment should be reversed. Thus, it may be considered in determining harm from the trial court's grant of the partial summary judgment. *See Progressive County Mut. Ins.,* 177 S.W.3d at 921. Based on this consideration, we conclude that there is no remaining issue of material fact because the declaratory judgment decided the same issue that was in dispute in the motion for summary judgment proceedings. That is, the declaratory judgment determined that McAlester had agreed to release Smith from the claims asserted in this case. For this reason, we hold that, even if the trial court improperly granted the motion for summary judgment, the error was harmless. *See* TEX. R.APP. P. 44.1.

We overrule McAlester's first and second issues.

## Conclusion

We affirm the judgment of the trial court.

Justice JENNINGS, dissenting.

TERRY JENNINGS, Justice dissenting.

Because the majority errs in holding that the declaration in the trial court's

March 30, 2005 final judgment against appellant, McAlester Fuel Company ("McAlester"), renders harmless any error committed by the trial court in previously entering its November 29, 2004 partial summary judgment in favor of appellee, Smith International, Inc. ("Smith"), I respectfully dissent.

In support of its holding, the majority first asserts, in discussing waiver, that because "McAlester directed no argument specifically at the declaratory judgment portion of the [final] judgment in its opening brief," it needs to address "only those contentions asserted in [McAlester's] reply brief that can be construed to expound on McAlester's second issue presented in its opening brief or that reply to issues fully briefed by Smith." Next, the majority asserts that "there is no indication that the trial court relied on its grant of the motion for summary judgment when it determined [Smith's] declaratory judgment claim." Thus, it concludes that "McAlester has not shown that the declaratory judgment portion of the final judgment should be reversed." In support of this conclusion the majority relies on *Progressive County Mutual Insurance Company v. Boyd*, 177 S.W.3d 919, 921 (Tex.2005).

However, in regard to the majority's discussion of waiver, it is important to consider exactly what McAlester is complaining about in this appeal. In its first issue, McAlester contends that the trial court erred in granting summary judgment on November 29, 2004, on McAlester's claims for breach of contract, negligence, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act ("DTPA").[1] Although it does not separately attack each portion of the final judgment, McAlester, in its second issue, expressly contends that the trial court erred in entering its March 30,

2005 final judgment, "which concerned the same facts as the November 29, 2004 summary judgment and resulted from that erroneous ruling." Simply put, McAlester is challenging the final judgment in its entirety, including the trial court's declaration. Accordingly, this Court should not fault McAlester for failing to anticipate and specifically address the harmless error argument made by Smith in its appellee's brief.

Moreover, although the trial court did not state that it "relied on its grant of the motion for summary judgment" in the paragraph of the final judgment in which it made its declaration, it did state in the preceding paragraph:

> The Court, after taking judicial notice of its file (including its Order on Defendant's Motion for Summary Judgment [signed November 29, 2004] and its Order [signed March 7, 2005]) and considering the evidence, stipulations, and jury answers, is of the opinion that McAlester should take nothing by this suit and that Smith should recover damages from McAlester.

Thus, it is readily apparent that the trial court did in fact rely upon its November 29, 2004 partial summary judgment when it entered its March 30, 2005 final judgment. I, therefore, would not summarily dismiss McAlester's argument that "[a]n erroneous partial summary judgment precluded McAlester from presenting DTPA, misrepresentation, negligence, and its own breach of contract claims to the jury." *See NationsBank of Tex., N.A. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 979 S.W.2d 385, 396 (Tex.App.-Corpus Christi 1998, pet. denied).

Finally, the majority's reliance on *Boyd* is misplaced. In *Boyd*, an insurance cov-

---

1. *See* Tex. Bus. & Com.Code Ann. § 17.46(b)(2), (5), (7), (8), (24) (Vernon Supp.2006).

erage case, the Texas Supreme Court held that even if the trial court erred in granting a partial summary judgment as to a bad-faith and certain extra-contractual claims, the error was harmless because a jury finding in the underlying breach of contract case negated coverage by Progressive's insurance policy. 177 S.W.3d at 920. Importantly, the breach of contract claim brought by Boyd, the insured, was "fully litigated after the summary judgment was granted." *Id.* at 921. Moreover, at the conclusion of trial, the jury specifically found that Boyd had not been involved in an accident with an uninsured vehicle. *Id.* at 920. This specific finding logically "negated" Boyd's bad-faith and other extra-contractual claims. *Id.* at 921–22.

Here, as noted by the majority, only Smith's counterclaim for breach of contract and McAlester's fraudulent inducement claims were tried to a jury. Unlike the specific jury finding in *Boyd,* the trial court's declaration in this case does not logically negate McAlester's claims for breach of contract, negligence, negligent misrepresentation, and violations of the DTPA.

Accordingly, this Court should hold that the declaration in the trial court's March 30, 2005 final judgment did not render harmless any error committed by the trial court in previously entering its November 29, 2004 partial summary judgment and address the merits of McAlester's two issues.