Opinion issued January 30, 2009 
















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00534-CV

____________


JAMES W. FAIRCHILD, INDIVIDUALLY AND IN THE NAME AND
RIGHT OF EXETER ENERGY SERVICES, L.P., AND FAIRCHILD &
WELLS, INC., Appellants


V.


THOMAS F. BARRON, TETRA PRIME, INC., AND JOHN WELLS,
INDIVIDUALLY, Appellees






On Appeal from 129th District Court

Harris County, Texas

Trial Court Cause No. 2005-06292








MEMORANDUM OPINION


 Appellants, James W. Fairchild, individually and in the name and right of
Exeter Energy Services, L.P. (Exeter LP), and Fairchild & Wells, Inc. (hereinafter
collectively referred to as "Fairchild"), appeal the trial court's grant of summary
judgment in favor of appellees, Thomas F. Barron, Tetra Prime, Inc., and John Wells,
individually. In six issues, Fairchild contends the trial court erred by granting
appellees' motions for summary judgment and denying Fairchild's Amended Motion
to Compel Discovery. In his remaining issue, Fairchild contends appellees are
estopped in this appeal. We conclude Fairchild waived his challenges to the motions
for summary judgment by failing to appeal all possible grounds for the trial court's
granting of summary judgment. We also conclude that the trial court did not abuse its
discretion by denying Fairchild's Amended Motion to Compel, and that Fairchild
waived his complaint about estoppel by failing to adequately brief the issue on appeal. 
We affirm.

Background

 Barron, Wells, and Fairchild (along with a fourth partner who eventually left)
formed Exeter Energy Services, L.L.C. (Exeter). Barron served as Exeter's manager. 
Because Exeter provided engineering and construction services pertaining to
underground storage of hydrocarbon gas, and Barron, Wells, and Fairchild were each
involved in other businesses relating to hydrocarbon gas, Exeter's Articles of
Incorporation (LLC Agreement) contained the following provision:

Conflicts of Interest. Subject to the other express provisions of these
Regulations, each Member, Manager, Officer, or affiliate thereof may
engage in and possess interests in other business ventures of any and
every type and description, independently or with others, including ones
in competition with the Company, with no obligation to offer to the
Company or any other Member, Manager, or Officer the right to
participate therein. The Company may transact business with any
Member, Manager, Officer, or Affiliate thereof, provided the terms of
those transactions are no less favorable than those the Company could
obtain from unrelated third parties.


The LLC Agreement also provided that dissolution of Exeter required unanimous
consent of the partners:

Dissolution. (a) Subject to Section 8.01(b), the Company shall dissolve
and its affairs shall be wound up on the first to occur of the following
events:


 (i) the expiration of the period fixed for the duration of the
Company in the Articles;


 (ii) the unanimous consent of the Members;


 (iii) the death, expulsion, withdrawal, dissolution, or Bankruptcy
of any Member, or the occurrence of any other event that
terminates the continued membership of any Member in the
Company; and


 (iv) entry of a decree of judicial dissolution of the Company
under Article 6.02 of the Act.

 Barron, Wells, and Fairchild later decided to convert Exeter to a limited
partnership, Exeter LP. They executed the Statement of Unanimous Consent of the
Members and Manager of Exeter Energy Services, L.L.C., which states that "Thomas
F. Barron, the sole Manager of [Exeter], is hereby authorized to execute a Plan of
Conversion and Articles of Conversion in substantially the same form submitted to the
Members. Thomas F. Barron is further authorized to take any and all other actions
necessary to effect the Conversion." Barron, Wells, and Fairchild executed the Articles
of Conversion, and Barron executed the Plan of Conversion. Both the Statement of
Unanimous Consent and the Plan of Conversion state, "Concurrently with the
conversion of [Exeter], each of the partners of [Exeter] will be deemed to convey a
.033% Partnership Interest in [Exeter] to TETRA PRIME, INC., a Texas corporation. 
TETRA PRIME, INC., owning a .1% Partnership Interest, will then be the general
partner of [Exeter]." Barron was the President of Tetra Prime, Inc. 

 An attorney created the Limited Partnership Agreement (LP Agreement), which
Barron, Wells, and Fairchild executed. The LP Agreement maintained the partners'
right to compete but eliminated the requirement of unanimous consent for dissolution:

Rights of Competition. Neither the General Partner nor any of its agents
or employees shall be obligated to devote its or their full time and
attention to the Partnership and its affairs, but only such time as
reasonably necessary for the conduct of the Partnership's business. 
Except as otherwise expressly provided in this Agreement, nothing
contained in this Agreement shall preclude the General Partner, any
Limited Partner and their respective Affiliates from engaging in any
business or making any other investment, even though such business or
other investment may be in competition with the Partnership. Any such
activity may be undertaken with or without notice to or participation
therein by the other Partners and neither any Partner nor the Partnership
shall have any right or claim with respect to any such activity or the
income or profits therefrom.


 . . . .

Events of Dissolution. The Partnership shall be dissolved upon the
occurrence of any of the following events:


 (i) The sale, transfer or conveyance pursuant to other
provisions hereof, or by foreclosure sale or sales, of all of
the assets of the Partnership;


 (ii) the acquisition by a Partner of the Partnership Interest
hereunder of all other Partners;


 (iii) the death or bankruptcy of a General Partner or any
assignment by a General Partner for the benefit of creditors,
or the occurrence of any act or omission by a General
Partner which results in the dissolution of the Partnership by
law or under any provision hereof;


 (iv) the agreement of the Partners owning a majority of the
Partnership Interest of the Partnership; or


 (v) December 31, 2030.

 

 . . . .


Winding Up. Upon dissolution of the Partnership and unless the
Partnership's business is continued as provided in Section 9.2, the
General Partner shall proceed to wind up the affairs of the Partnership,
liquidate the assets of the Partnership that it determines shall be sold and
terminate the Partnership.


Though Barron, Wells, and Fairchild each signed the agreement, at that time none were
aware of the change from the LLC Agreement's provision requiring unanimous consent
for dissolution to the LP Agreement's provision requiring majority consent for
dissolution.

 Falcon Gas Storage (Falcon) contacted Wells about potential claims against
Wells Chappell & Company (Wells Chappell) for work Wells Chappell previously
performed for Falcon. Wells settled the potential lawsuit by offering $400,000 of
engineering services over a two-year period. The Settlement Agreement between Wells
and Falcon contained the following provision:

You agree that, in the event that FAW and/or [Exeter LLC] contemplates
pursuing any legal action against Falcon and/or any of Falcon's
subsidiaries or affiliates, you, as a shareholder or equity owner in either
or both of such companies, shall vote not to pursue any such legal action
against Falcon and/or any of Falcon's subsidiaries or affiliates to the
extent that you have a right to cast such vote. You further agree that if
either FAW or Exeter [LLC] nevertheless pursues any legal action
against Falcon and/or any of its subsidiaries or affiliates and as a result
thereof recovers any damages, then, to the extent that you are entitled, a
shareholder or other equity owner in either FAW or Exeter, to participate
in the distribution of any such damages, you shall promptly pay over your
share of any and all such damages to Falcon.


Meanwhile, Exeter LP filed liens against Falcon for $350,000 of unpaid engineering
fees. Exeter LP--with Barron and Wells in favor and Fairchild against--settled with
Falcon by reducing the debt to $150,000. Wells declined his distribution from that
settlement. 

 More than two years after creating Exeter LP, Barron and Wells decided to
dissolve the partnership. Fairchild recognized the disparity between the LLC
Agreement and the LP Agreement and requested that Barron and Wells amend the LP
Agreement to require unanimous consent to dissolve Exeter. Barron and Wells
declined to do so. Barron and Wells executed a resolution to begin winding down
Exeter LP on January 5, 2004. Barron began soliciting clients of Exeter to transfer
their business to Essex, Barron's company, in late 2003 or early 2004. 

 On January 5, 2004, Barron sent Fairchild an email stating that if Fairchild
wanted to submit a bid on Exeter's assets, a $5000 cashier's check was due to Barron
by noon on January 6, 2004. Fairchild requested and received a one-day extension to
January 7, 2004. However, Fairchild chose not to submit the cashier's check or a bid
because he objected to a clause in the Purchase Agreement requiring all assets to be
removed from the building the same day. A few days later, Fairchild discovered that
Barron, as the sole bidder, had purchased Exeter's assets on the afternoon of January
7, 2004.

 In response to the lawsuit filed by Fairchild, appellees initially filed a request for
Traditional and No-Evidence Motion for Summary Judgment. The trial court denied
that motion, except for the claim of statute of frauds. Fairchild asserts that he then filed
a motion to compel, but the record contains neither a motion to compel nor a ruling by
the trial court. Fairchild sent a letter to opposing counsel informally requesting
discovery information. Four days after the discovery period expired, Fairchild filed his
Amended Motion to Compel, which the trial court granted in part and denied in part. 
 On the same day the trial court issued its order concerning the Amended Motion to
Compel, the trial court ruled on appellee's First Amended and Second Traditional and
No-Evidence Motion for Summary Judgment. In pertinent part, the court granted in
full the matter-of-law motion for the claim for tortious interference. The court also
granted the matter-of-law motion for the claims for breach of fiduciary duty, except for
the breach of fiduciary duty claim against Wells predicated upon his alleged breach of
fiduciary duty in agreeing to the terms of the settlement in the Falcon lawsuit. The trial
court later granted in part appellees' Third Traditional and No-Evidence Motion for
Summary Judgment, dismissing with prejudice the declaratory judgment claim based
on mutual mistake without stating the basis for its ruling. The trial court also granted
appellees' Fourth Traditional and No-Evidence Motion for Summary Judgment,
dismissing with prejudice the derivative claim against Wells for breach of fiduciary
duty. The trial court did not state the basis for any of its rulings on the summary
judgments. The trial court granted the Agreed Motion for Entry of Final Take Nothing
Judgment, and Fairchild appealed. Summary Judgment

 In issues four, six, and seven, Fairchild contends the trial court erred in granting
appellees' motions for summary judgment because Fairchild raised a genuine issue of
material fact on the issue of tortious interference, breach of fiduciary duty, and mutual
mistake. Alternatively, Fairchild contends he was prevented from raising a genuine
issue of material fact due the trial court's denial of Fairchild's Amended Motion to
Compel. 

 A. Standard of Review

 We review summary judgments de novo. Valence Operating Co. v. Dorsett, 164
S.W.3d 656, 661 (Tex. 2005). When, as here, a summary judgment does not specify
the grounds on which it was granted, we will affirm the judgment if any one of the
theories advanced in the motion is meritorious. Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004).

 Summary judgment is proper only when a movant establishes that there is no
genuine issue of material fact and that the movant is entitled to judgment as a matter
of law. Tex. R. Civ. P. 166a(c). A motion must state the specific grounds relied upon
for summary judgment. Id. In reviewing a summary judgment, we must indulge every
reasonable inference in favor of the nonmovant, take all evidence favorable to the
nonmovant as true, and resolve any doubts in favor of the nonmovant. Valence
Operating Co., 164 S.W.3d at 661.

 When there are multiple grounds for summary judgment and the order does not
specify the ground on which the summary judgment was rendered, the appealing party
must negate all grounds on appeal. Ellis v. Precision Engine Rebuilders, Inc., 68
S.W.3d 894, 898 (Tex. App.--Houston [1st Dist.] 2002, no pet.) (citing State Farm
Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 381 (Tex. 1993)). If summary judgment may
have been rendered, properly or improperly, on a ground not challenged, the judgment
must be affirmed. Id. (citing Holloway v. Starnes, 840 S.W.2d 14, 23 (Tex.
App.--Dallas 1992, writ denied)).

 B. Tortious Interference

 In his fourth issue, Fairchild asserts that the trial court erred in granting the
motion for summary judgment as to the claim for tortious interference because
Fairchild raised a genuine issue of material fact. Without stating the basis for its
decision, the trial court granted matter-of-law summary judgment against Fairchild on
the tortious interference claim. In this appeal, Fairchild does not challenge each of the
grounds under which the matter-of-law motion for summary judgment could have been
granted. We therefore must uphold the summary judgment.

 In a derivative action, a plaintiff seeks recovery not in his individual capacity but
on behalf of the business organization. See Christian v. ICG Telecom Can., Inc., 996
S.W.2d 270, 274 (Tex. App.--Houston [1st Dist.] 1999, no pet.). The elements of
tortious interference with an existing contract are: "(1) an existing contract subject to
interference, (2) a willful and intentional act of interference with the contract, (3) that
proximately caused the plaintiff's injury, and (4) caused actual damages or loss." 
Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc., 29 S.W.3d 74, 77 (Tex. 2000).

 In Fairchild's third amended original petition, which was the live pleading at the
time the trial court granted the second matter-of-law summary judgment, Fairchild
asserts claims for (1) fraudulent misrepresentation; (2) breach of fiduciary duty-- 
defendant Barron; (3) breach of fiduciary duty--defendant Wells; (4) conversion; (5)
conspiracy; and (6) "Derivative Claim." Within the section entitled "Derivative
Claim," Fairchild claims appellees "interfered with existing contracts and business
relationships of Exeter [LP]" and that "Fairchild has had to bring this lawsuit in the
name of [Exeter LP] in order to recover these losses."

 In the second matter-of-law motion for summary judgment, appellees challenge
the derivative claim for tortious interference under a section entitled "Fairchild's
derivative claim fails because dissolution was proper and Fairchild's claim focuses on
his personal damage." The motion for summary judgment asserts as its first ground
that "Exeter was properly dissolved, negating any damages. As such, there is no
actionable theory of recovery which would support a derivative claim on behalf of the
Partnership." The motion for summary judgment asserts as its second ground that the
"derivative claim fails because [Fairchild] is disguising his personal claims in the form
of a derivative action." Without stating its reasons, the trial court granted the matter-of-law motion for summary judgment with respect to Fairchild's claims for tortious
interference.

 In his initial brief on appeal, Fairchild does not challenge each basis for the
matter-of-law motion for summary judgment. Fairchild only addresses damages, but
does not challenge the motion's assertion that he was disguising personal claims in the
form of a derivative action. We uphold the trial court's summary judgment ruling
when, as here, that summary judgment may have been rendered on a ground not
challenged on appeal. See Ellis, 68 S.W.3d at 898. We overrule issue four. C. Breach of Fiduciary Duty 

 In his sixth issue, Fairchild contends the trial court erred in granting appellees'
motion for summary judgment as to the claims for breach of fiduciary duty because
Fairchild raised a genuine issue of material fact. 

 The third amended original petition asserted a claim for breach of fiduciary duty
by Barron, claiming Barron breached duties owed to Fairchild in Fairchild's individual
capacity and as Fairchild stands in the name and right of Exeter LP. Fairchild made the
same complaint against Wells, claiming Wells owed duties to Fairchild in Fairchild's
individual capacity and as Fairchild stands in the name and right of Exeter LP. 
Appellees challenged the breach of fiduciary duty claims in their second matter-of-law
motion for summary judgment, in the section entitled "Fairchild's derivative claim fails
because dissolution was proper and Fairchild's claim focuses on his personal
damages." In that section, appellees assert a first ground, which states, "Fairchild's
claim for a breach of fiduciary duty . . . is equally without merit because . . . Exeter
[LP] was properly dissolved, negating any damages. As such, there is no actionable
theory of recovery which would support a derivative claim on behalf of the
partnership." The second ground in the motion was that "Fairchild's derivative claim
fails because he is disguising his personal claims in the form of a derivative action." 
Within that second ground, appellees explained that the claim for breach of fiduciary
duty was focused exclusively on Fairchild's personal damages throughout the course
of the litigation and that the pleading was an "attempt to couch [Fairchild's] personal
claims against Exeter [LP] into a sham derivative claim." 

 The trial court's ruling on the second motion for matter-of-law summary
judgment granted summary judgment, with respect to all of Plaintiffs' claims for breach of fiduciary duty
against defendant Thomas F. Barron and defendant John Wells, except
for the breach of fiduciary duty claim against defendant John Wells
predicated upon his alleged breach of fiduciary duty in agreeing to the
terms of the settlement in the Falcon Gas Storage Company lawsuit, as
to which cause of action the Motions are hereby DENIED . . . .

 

After that, appellees filed a fourth matter-of-law motion for summary judgment
challenging "Fairchild's derivative claim that Wells breached his fiduciary duty
regarding the Falcon settlement." The motion's grounds included assertions that (1)
Wells acted in good faith so that the business judgment rule applies to require proof of
something more than an unwise, inexpedient, negligent, or imprudent act; (2)
Fairchild's derivative action lacks an underlying claim; (3) Fairchild accepted the
benefits of the Falcon settlement; and (4) the damages are uncertain. Without stating
its reasons, the trial court granted the fourth matter-of-law motion for summary
judgment. 

 In his appellate brief, Fairchild fails to challenge each of the grounds under
which these motions for summary judgment could have been rendered in favor of
appellees. Concerning the second matter-of-law summary judgment, Fairchild fails to
challenge on appeal the ground for summary judgment premised on the assertion that 
Fairchild "is disguising his personal claims in the form of a derivative action," which
was one of the two grounds that the trial court could have ruled in favor of appellees
in that motion for summary judgment. Concerning the fourth matter-of-law summary
judgment, Fairchild fails to challenge on appeal the ground for summary judgment
premised on the assertion that Wells's decisions related to the Falcon settlement are
protected by the business judgment rule, which was one of several grounds on which
the trial court could have ruled in favor of appellees in that motion for summary
judgment.

 We must affirm the trial court's judgment if a ground for summary
judgment--whether proper or not--is not challenged on appeal. See id. at 898. By
failing to challenge on appeal each ground under which the summary judgment could
have been granted, Fairchild has waived error. See id. We overrule issue six. 

 D. Mutual Mistake Claims

 In his seventh issue, Fairchild contends the trial court erred in granting
appellees' motion for summary judgment as to Fairchild's claims for mutual mistake
because Fairchild raised a genuine issue of material fact. In his Amended Original
Petition, Fairchild seeks "declaratory relief holding the Agreement of Limited
Partnership of Exeter Energy Services, L.P., is the result of mutual mistake and is
subject to reformation." Appellees challenged the claim of mutual mistake in their
Second and Third Traditional and No-Evidence Motion for Summary Judgment. With
respect to the claim of mutual mistake, the trial court denied the second summary
judgment motion but granted the third. 

 In the Third Traditional and No-Evidence Motion for Summary Judgment,
appellees assert, in addition to other grounds, that the mutual mistake claim for which
Fairchild seeks declaratory judgment must fail because Fairchild impermissibly raised
a declaratory judgment action in an amended petition. On appeal, Fairchild fails to
address this ground for matter-of-law summary judgment. By failing to challenge on
appeal each ground under which the summary judgment could have been granted,
Fairchild has waived error. See id. We overrule issue seven. 

Arguments Raised in Appellant's Reply Brief and Post-Submission Briefing

 After appellees pointed out in their appellate brief that "Fairchild fails to negate
numerous bases upon which the trial court could have granted summary judgment on
various claims," Fairchild raised new arguments in its reply brief to try to remedy the
deficiency in its original appellant's brief. After questions about the adequacy of the
original appellant's brief were raised in oral argument, Fairchild filed a motion to
further supplement its reply brief by raising additional challenges to the motion for
summary judgment rulings by the trial court. Appellees voice objections to these new
arguments.

 An issue raised for the first time in a reply brief is ordinarily waived and need
not be considered by this Court. McAlester Fuel Co. v. Smith Int'l., Inc., 257 S.W.3d
732, 737 (Tex. App.--Houston [1st Dist.] 2007, pet. denied) (citing N.P. v. Methodist
Hosp., 190 S.W.3d 217, 225 (Tex. App.--Houston [1st Dist.] 2006, pet. denied); Lopez
v. Montemayor, 131 S.W.3d 54, 61 (Tex. App.--San Antonio 2003, pet. denied);
Zamarron v. Shinko Wire Co., 125 S.W.3d 132, 139 (Tex. App.--Houston [14th Dist.]
2003, pet. denied)). We therefore do not consider the additional grounds raised by
Fairchild in its reply brief and deny the motion to supplement the reply brief.Motion to Compel

 In issues one through three, Fairchild contends that the trial court erred by
denying Fairchild's Amended Motion to Compel Discovery because the documents and
responses requested were within the scope of appropriate discovery and not exempt by
any applicable privilege. Fairchild claims the consequence for the lack of the discovery
is that Fairchild was unable to adequately respond to appellees' Second Traditional &
No-Evidence Motion for Summary Judgment without the requested documents, and
Fairchild was unable to provide this Court a complete record on appeal. Having determined that the summary judgments must be upheld because
Fairchild failed to challenged on appeal each of the grounds under which the summary
judgments could have been granted, we do not reach Fairchild's complaint about the
trial court's ruling on the motion to compel discovery. We overrule Fairchild's first,
second, and third issues.

Estoppel

 In his fifth issue, Fairchild asserts that the trial court erred in finding that
Fairchild was estopped or had waived his right to assert that acts by Barron and Wells
relating to the Falcon settlement were improper. Fairchild's brief fails to provide a
single citation to authority or to the record. See Tex. R. App. P. 38.1(h) ("The brief
must contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record."). Although appellate courts generally
construe the briefing rules liberally, issues unsupported by the citation of authority
present nothing for the court to review. Harris County Mun. Util. Dist. No. 48 v.
Mitchell, 915 S.W.2d 859, 866 (Tex. App.--Houston [1st Dist.] 1995, writ denied). 
We hold that Fairchild waived this issue on appeal. We overrule issue five.






Conclusion

 We affirm the judgment of the trial court. 

 

 

 Elsa Alcala

 Justice 

 

Panel consists of Chief Justice Radack, and Justices Alcala and Hanks.