# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00379-CV

**Michelle Leigh Conkle, Appellant**

**v.**

**Rachelle Chery; AutoNation, Inc., RI/RMT Acquisition, Ltd.; and RI/RMT Acquisition, GP, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-06-003373, HONORABLE JON N. WISSER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michelle Leigh Conkle sued Appellee Rachelle Chery for negligence and negligence per se as a result of a motor scooter accident. Conkle sued Appellees AutoNation, Inc., RI/RMT Acquisition, Ltd., and RI/RMT Acquisition, GP (collectively "AutoNation") under various theories of vicarious liability. The trial court granted AutoNation's motion for partial summary judgment on the vicarious liability claims. The negligence claim against Chery went to trial and the jury found that the negligence of both Conkle and Chery caused the accident and that Conkle was ninety percent responsible and Chery was ten percent responsible. Conkle now appeals the trial court's grant of summary judgment. Because we conclude that, even if the trial court erred in granting summary judgment as to the vicarious liability claims, the error was rendered harmless by the jury's finding on proportionate responsibility, we affirm.

## BACKGROUND

Conkle's claims are based on a motor scooter accident that occurred on August 30, 2006. At the time of the accident, Chery was test-driving a Jeep Liberty owned by AutoNation and was accompanied by Benjamin Barnes, an AutoNation sales agent. Chery and Barnes were traveling westbound on La Creseda Drive in Austin, Texas, while Conkle was traveling southbound on Beckett Road on her Yamaha scooter. As the vehicles crossed the intersection of Beckett and La Creseda, Conkle crashed her scooter, sustaining serious injuries.

The location of the cars during the accident and the cause of the accident are disputed. According to Conkle, Chery failed to stop at a posted stop sign and yield the right of way. Conkle alleges that she was too close to safely stop and that she had to lay the scooter down on its right side in order to avoid colliding with Chery's Jeep Liberty in the middle of the intersection. In contrast, Chery, Barnes, and AutoNation claim that Chery did in fact stop at the intersection and yielded the right of way. They assert that the Jeep Liberty had cleared the intersection when Conkle crashed, and that no collision was imminent. They also allege that Conkle was speeding, which caused her to approach the intersection too quickly and lose control, resulting in the accident. They further allege that Conkle erred in applying her front brakes first—which they claim contributed to her loss of control of the scooter—and in choosing to lay down the scooter.

After Conkle crashed, Chery stopped the Jeep on the far side of the intersection, and emergency personnel were called. When Officer Richard Cross arrived on the scene, he questioned Barnes. According to Cross's report, Barnes claimed to have been the driver and said that the Jeep Liberty had not yet entered the intersection when Conkle crashed. Conkle alleges that Barnes lied

2

to the officer in order to conceal the fact that Chery, an uninsured driver, was driving the vehicle. Barnes, however, maintains that he told Officer Cross that Chery was the driver and that the Jeep had already driven through the intersection when the scooter crashed. Officer Cross did not speak with Chery or request insurance information from either Barnes or Chery. According to AutoNation, a few days after the accident Conkle provided a statement to Officer Cross giving her version of the events.

Conkle sued Barnes and Chery for negligence and negligence per se in causing the accident.[1] Conkle also sued AutoNation, alleging that it was vicariously liable for Chery's negligence under the theories of negligent entrustment and joint enterprise. In her sixth amended petition, Conkle further alleged that during the initial police investigation, Barnes and AutoNation concealed the true identity of the driver and the true location of the Jeep during the accident, and that AutoNation was vicariously liable under respondeat superior and ratification theories for "all of the acts of omission and commission on the part of Barnes that form the basis of the claims and causes of action asserted." Conkle's claims and causes of action related to Barnes's post-accident behavior included negligence per se, aiding and abetting, civil conspiracy, and "failure to comply with the statutory and common law duties owed to Conkle."

AutoNation moved for partial summary judgment on the vicarious liability claims "includ[ing] negligent entrustment, joint enterprise, and respondeat superior." After AutoNation filed its motion for summary judgment, but before the hearing on the motion, Conkle filed a seventh amended petition, which alleged that the post-accident conduct by Chery, Barnes, and AutoNation

---

[1] Because of the initial confusion as to who was driving the Jeep Liberty, the petition alleges negligence and negligence per se by "the driver of the Jeep Liberty."

and their "failure . . . to comply with the common law and statutory duties owed to Conkle constitute[d] negligence," gross negligence, aiding and abetting, and civil conspiracy. Conkle further alleged that AutoNation was vicariously liable for negligence per se by Barnes and Chery.

After a hearing, the trial court granted summary judgment with respect to the claims against AutoNation, and the negligence and negligence per se claims against Chery and Barnes went to trial.[2] During the course of the trial, Conkle non-suited Barnes. The jury found that the

_____

[2] There is a dispute as to whether the trial court granted summary judgment as to all of the post-accident tort claims. The order granting the motion for partial summary judgment stated that summary judgment was granted as to Conkle's claims of:

1. Negligent entrustment;
2. Joint enterprise;
3. "Negligently conducted test drive"[;]
4. Post-accident conduct of Defendants, including alleged violations of criminal statutes and negligence per se[;]
5. Defendants' alleged "civil conspiracy in[,]"[] ratification of, and alleged aiding and abetting the alleged "post-accident" conduct.

In contrast, the trial court's final judgment noted that the court had previously granted summary judgment regarding Conkle's claims of:

1. Negligent entrustment;
2. Joint enterprise;
3. "Negligently conducted test drive";
4. Post-accident conduct of Defendants, including alleged violations of criminal statutes, *negligence*, and negligence per se; and
5. Defendants' alleged "civil conspiracy in[,]"[] ratification of, and alleged aiding and abetting the alleged "post-accident" conduct.

(Emphasis added.) Conkle claims that the trial court granted summary judgment as to all of the post-accident tort claims—including ordinary negligence—and that to do so was in error, because the ordinary negligence claim was not specifically addressed in AutoNation's motion for summary judgment. *See Rotating Servs. Indus., Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("A defendant who does not amend or supplement its motion for summary judgment to address claims asserted in a plaintiff's amended pleading is generally not entitled to a summary judgment on the plaintiff's entire case."). AutoNation counters that summary judgment was not granted as to these later-pleaded claims and that Conkle waived these claims when she failed to pursue them at trial. In light of our disposition of the appeal, we need not resolve the matter.

4

negligence of both Chery and Conkle proximately caused the accident. The jury further found that Conkle was ninety percent responsible and that Chery was ten percent responsible. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.003 (West 2008) (requiring juries to apportion responsibility among claimants and defendants). As a result of these jury findings, the trial court determined that, pursuant to section 33.001 of the civil practice and remedies code, Conkle was barred from recovery because her percentage of responsibility was greater than fifty percent and rendered a final, take nothing judgment. *See id.* § 33.001 (West 2008) (prohibiting plaintiff who is found more than fifty percent responsible from recovering any damages). Conkle now appeals the trial court's grant of partial summary judgment as to her claims against AutoNation. She does not appeal the jury's verdict as to the claims against Chery or the jury's apportionment of responsibility.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We must take as true all evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.* To merit reversal, a trial court's erroneous grant of summary judgment must also be harmful to the non-movant. *See* Tex. R. App. P. 44.1; *Progressive Co. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005); *Labor v. Warren*, 268 S.W.3d 273, 277 (Tex. App.—Amarillo 2008, no pet.); *McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 736 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). To show harm, the appellant must show that the trial court's error probably caused the rendition of an improper judgment or probably prevented the proper presentation of the case on appeal. Tex. R. App. P. 44.1(a); *Labor*, 268 S.W.3d at 277.

5

## DISCUSSION

Conkle argues that the trial court erred in granting summary judgment on her claims of negligent entrustment and joint enterprise because she raised a material issue of fact as to the challenged elements of both causes of action. Conkle further argues that the trial court erred in granting summary judgment on her post-accident claims of negligence per se, negligence, and gross negligence. AutoNation responds that, to merit reversal, Conkle must show that the trial court's erroneous grant of summary judgment was harmful. *See* Tex. R. App. P. 44.1; *Boyd*, 177 S.W.3d at 921-22; *McAlester Fuel Co.*, 257 S.W.3d at 736. AutoNation claims that, even if the trial court's decision to grant summary judgment was in error, the jury's finding that Conkle was ninety percent responsible for the accident rendered any such error harmless.[3]

The Texas Supreme Court has held that a trial court's erroneous decision to grant a motion for summary judgment can be rendered harmless by subsequent events in the trial court. *Boyd*, 177 S.W.3d at 922-23 (holding that any error in granting summary judgment was rendered harmless when subsequent jury findings negated essential element of summary judgment claim); *see also Labor*, 268 S.W.3d at 277 (applying *Boyd*). In *Boyd*, the supreme court reasoned that a jury's subsequent findings of fact may negate an essential element of the claim dismissed on summary judgment. 177 S.W.3d at 921-22. When that happens, "a trial court is not required to vacate a summary judgment and then reinstate it to accomplish the same end." *Id.* at 921.

---

[3] AutoNation does not concede that there was error in the trial court's decision to grant partial summary judgment.

6

Here, the jury found that the negligence of both Chery and Conkle proximately caused the accident, and that Conkle's share of responsibility was ninety percent. Because Conkle's share of responsibility exceeded fifty percent, she was barred from recovering any damages from Chery. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.003. AutoNation argues that the jury's apportionment of responsibility and the resulting statutory bar on Conkle's recovery of damages combine to render harmless any error in the trial court's grant of summary judgment as to Conkle's negligent entrustment, joint enterprise, and post-accident tort claims.

*Negligent Entrustment*

In her first issue on appeal, Conkle argues that the trial court erred in granting summary judgment on her claim that AutoNation negligently entrusted the Jeep Liberty to Chery. To prove negligent entrustment, Conkle would have to show that: (1) AutoNation was the owner of the Jeep Liberty and entrusted it to Chery; (2) Chery was an unlicensed, incompetent, or reckless driver; (3) AutoNation knew that Chery was unlicensed, incompetent, or reckless; (4) Chery was negligent; and (5) Chery's negligence proximately caused the accident and Conkle's injuries. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex. 2007). Thus, Conkle must essentially prove two negligence claims in order to recover—the first three elements go to the negligence of AutoNation in entrusting the car to Chery and the last two elements go to the negligence of Chery in causing the accident. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 580 (Tex. 2006) (liability of driver is prerequisite for finding owner liable through negligent entrustment); *Pesina v. Hudson*, 132 S.W.3d 133, 137 (Tex. App.—Amarillo 2004, no pet.) (negligent entrustment encapsulates two negligence actions in one). If Conkle were able to prove

7

both negligence claims, Chery's liability would then be imputed to AutoNation. *See F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007) (negligent entrustment is form of vicarious liability); *Spratling v. Butler*, 240 S.W.2d 1016, 1017 (Tex. 1951) ("If, after the automobile is entrusted to such driver, he operates it negligently, and thereby causes damages to a third person, the causal connection is shown between the negligence of the owner in lending him the automobile and the damage to the third person."); *Loom Craft Carpet Mills, Inc. v. Gorrell*, 823 S.W.2d 431, 432 (Tex. App.—Texarkana 1992, no writ) (negligent entrustment vests owner with liability for driver's wrong). The motion for summary judgment focused on the first of the two essential negligence claims—whether AutoNation was negligent in entrusting the car to Chery. The latter of the two claims—that Chery's negligence proximately caused the accident—was the subject of the jury trial.

The jury found that the negligence of both Chery and Conkle were proximate causes of the accident. But because the jury found that Conkle was ninety percent responsible for the accident and that Chery was only ten percent responsible, Texas's proportionate responsibility statute prevented Conkle from recovering any damages from Chery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.001 (prohibiting plaintiff who is found more than fifty percent responsible from recovering any damages). Since negligent entrustment is a form of vicarious liability, a successful claim would make AutoNation vicariously liable only to the extent that Chery was liable. *See Rosell v. Central W. Motor Stages, Inc.*, 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002, pet. denied) (holding that "[o]nce negligent hiring or entrustment is established, the owner/employer is liable for the acts of the driver, and the degree of negligence of the owner/employer is of no consequence"). Thus,

8

Chery's ten percent responsibility would be imputed to AutoNation, and Conkle would remain ninety percent liable, and unable to recover.[4]

Conkle contends that if her negligent entrustment claim had gone forward, the jury would have been required to apportion responsibility among all three parties—Conkle, Chery, and AutoNation—and the jury might then have assigned Conkle less than fifty percent liability. Conkle points to the supreme court's decision in *Duenez* as authority for her claim that the jury must apportion responsibility among all three parties. *See* 237 S.W.3d at 687-88. However, *Duenez* did not involve a theory of vicarious liability, but rather addressed the question of whether an owner defendant in a dram shop suit should be included in the jury's apportionment scheme. *Id.* at 683; *see also* Tex. Alco. Bev. Code Ann. §§ 2.01-.03 (West 2007) (establishing civil liability for serving alcoholic beverages to an obviously intoxicated person). The supreme court held that the owner's liability should be calculated separately because the Dram Shop Act does not impose vicarious liability, but instead holds an owner liable for its own negligence in selling or serving alcohol to an obviously intoxicated patron. *Id.* at 685-87. In so holding, the court specifically distinguished Dram Shop actions from negligent entrustment actions, which impose vicarious liability. *Id.* at 687.

When asked to consider whether Texas's proportionate responsibility statute requires a party who is vicariously liable for a tortfeasor's actions to be included in the jury's apportionment

---

[4] Conkle does not appeal the jury verdict or its apportionment of responsibility for the accident; therefore that portion of the trial court's judgment is final. *See Gulf Ins. Co. v. Vantage Props., Inc.*, 858 S.W.2d 52, 54 (Tex. App.—Houston [14th Dist.] 1993, writ denied). Because the issue of fault has been finally and conclusively litigated, it cannot be relitigated in a subsequent action against AutoNation. *See Texas Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

determination, our sister courts have regularly held that it does not. *See, e.g.*, *Rosell*, 89 S.W.3d at 657 (holding that because driver's negligence is passed through to owner "it was proper to apportion fault among those directly involved in the accident"); *Loom Craft*, 823 S.W.2d at 432 ("We believe the better rule is to apportion fault only among those directly involved in the accident . . . ."). *But see Bedford v. Moore*, 166 S.W.3d 454, 461-63 (Tex. App.—Fort Worth 2005, no pet.) (holding that negligent entrustment requires owner to be included in jury's apportionment question, but relying on original version of *Duenez*, which was later withdrawn and substituted with *Duenez*, 237 S.W.3d at 680). The preferred approach is to apportion liability among those directly liable for the accident and "to hold the entrustor liable for the percentage of fault apportioned to the [entrusted] driver." *Loom Craft*, 823 S.W.2d at 432.

Here, the jury already apportioned liability among Chery and Conkle—the two parties directly liable for the accident. Had the negligent entrustment action proceeded to trial and been successful, AutoNation would have been liable for Chery's portion of the fault—ten percent—but Conkle's ninety percent share of the fault would have still prevented her from recovering damages. Therefore, assuming arguendo that the trial court erred in granting summary judgment on the question of negligent entrustment, the error is harmless. We overrule Conkle's first issue on appeal.

*Joint Enterprise*

In her second issue on appeal, Conkle contends that the trial court erred in granting summary judgment on her claim that AutoNation should be held liable under the theory that AutoNation and Chery were engaged in a joint enterprise. "Under the joint enterprise theory, courts impute liability to one who was not an active wrongdoer but who is so closely connected to the

wrongdoer to warrant the imposition of vicarious liability." *Mosqueda v. G & H Diversified MFG., Inc.*, 223 S.W.3d 571, 583 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Because joint enterprise is a form of vicarious liability, a successful claim for joint enterprise would—like negligent entrustment—only impose liability on AutoNation to the extent that it imposed liability on Chery. *Cf. Rosell*, 89 S.W.3d at 656-57 (holding section 33.003 only requires fault to be apportioned among those directly liable, not those vicariously liable through negligent entrustment or respondeat superior). Therefore, in the event that Conkle succeeded on her joint enterprise theory of liability, Chery's ten percent responsibility would again be imputed to AutoNation, and Conkle's ninety percent share of the liability would render her unable to recover. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.001. Without deciding if the trial court erred in granting summary judgment as to the joint enterprise theory of liability, we hold that any such error was rendered harmless by the jury's finding on proportionate responsibility. We overrule Conkle's second issue on appeal.

*Post-Accident Torts*

In her third issue on appeal, Conkle argues that the trial court erred in dismissing her post-accident tort claims, based on allegations that Chery, Barnes, and AutoNation initially attempted to conceal the fact that Chery was driving the Jeep Liberty at the time of the accident. She also points to Cross's report that Barnes said the Jeep had not yet entered the intersection when Conkle crashed, in contrast to Barnes's later testimony that the Jeep had already driven through the intersection. Conkle claims that because AutoNation concealed the fact that Chery was the driver and that the Jeep had crossed the intersection, the police report was inaccurate. Conkle contends she was harmed by the inaccurate police report because it prevented her from obtaining "prejudgment security" from AutoNation under chapter 601 of the transportation code. *See* Tex. Transp. Code

11

Ann. § 601.154 (West 1999). When an uninsured driver is involved in an accident, the Texas Department of Transportation may require that driver to post "security sufficient to satisfy any judgment for damages resulting from the accident" if there is a "reasonable probability that a judgment will be rendered against" the uninsured driver. *Id.* Conkle alleges that if the police report had been accurate, she would have been able to establish a reasonable probability that judgment would have been rendered in her favor, and then AutoNation or Chery would have been required to post security with the department.[5]

Conkle contends that AutoNation's motion for summary judgment on these post-accident torts addressed only the cause of action in her sixth amended petition—for negligence per se—and that it was therefore improper for the trial court to grant summary judgment on her gross negligence and simple negligence claims based on the same conduct, which were not alleged until her seventh amended petition.[6] Assuming that the trial court erred in granting summary judgment as to the later issues, such error was harmless.

---

[5] It is undisputed that Chery, a first-time car buyer, did not have a liability insurance policy. AutoNation carried a policy that covered all of the vehicles at all of its dealerships nationwide, but because AutoNation's policy had an unusually high deductible, *see* Tex. Ins. Code. Ann. § 601.072 (West Supp. 2008) (establishing minimum coverage amounts), it is disputed whether AutoNation would be considered uninsured for purposes of the prejudgment security provisions.

[6] As a general rule, summary judgment may not be granted on causes of action that were not addressed in the summary judgment motions. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983); *see also Harris*, 245 S.W.3d at 487. However, AutoNation claims that Conkle's sixth amended petition allegation that it breached its "common-law and statutory duties" covers any gross or simple negligence claims and that its motion for summary judgment is sufficiently broad to encompass the later-pleaded claims. *See Owens v. McLeroy, Litzler, Rutherford, Bauer & Friday, P.C.*, 235 S.W.3d 388, 391 (Tex. App.—Texarkana 2007, no pet.) ("Even when a later-filed claim is involved, if the motion for summary judgment is sufficiently broad to encompass that claim, then the movant need not amend his motion."). Because we hold that any error in granting summary judgment was rendered harmless by the jury's finding on proportionate responsibility, we need not address the question of whether AutoNation's motion for summary judgment was broad enough to invoke this exception.

Each of the post-accident torts alleged by Conkle—negligence, gross negligence, and negligence per se—requires proof of harm. *See D. Houston, Inc. v. Love*, 92 S.W.3d 450 (Tex. 2002) (elements of negligence); *ALCOA, Inc. v. Behringer*, 235 S.W.3d 456, 459 (Tex. App.—Dallas 2007, pet. denied) (elements of gross negligence); *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (elements of negligence per se). The harm Conkle alleges in her seventh amended petition is that she was denied the benefit of AutoNation being required to post a security deposit with the Department of Transportation under chapter 601 of the transportation code. *See* Tex. Transp. Code Ann. § 601.154. However, if AutoNation had been required to post security, that security would have been returned to it upon the jury's finding that Conkle was ninety percent liable for the accident.[7] *Id.* § 601.167 (West 1999) (requiring department of transportation to return security when there is final adjudication that depositor is not liable). In other words, the security would have been deposited with the department and then returned directly to AutoNation without Conkle ever receiving any benefit from it. Since Conkle would not have received any benefit from the security being posted, she was not injured by the lack of security. Thus, the jury's finding conclusively negates an essential element of the post-accident torts—injury or harm—and renders harmless any error in granting summary judgment. *See Boyd*, 177 S.W.3d at 921-22; *Labor*, 268 S.W.3d at 277. We overrule Conkle's third issue on appeal.

---

[7] We also note that, had the department determined that there was a reasonable probability that a judgment would be rendered against Chery or AutoNation, the fact of that determination would not have been admissible at trial. *See* Tex. Transp. Code Ann. § 601.169 (West 1999) (reasonable probability determination not admissible in civil suit).

13

## CONCLUSION

Because any error in granting summary judgment was rendered harmless by the jury verdict, we affirm.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Affirmed

Filed: February 25, 2009