**Opinion issued June 12, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01011-CV

———————————

**GORDON WESTERGREN & MARK SPARKS, Appellants**

**V.**

**JOHNNIE GLENN JENNINGS, JR., Appellee**

---

**On Appeal from the 253rd District Court**
**Chambers County, Texas**
**Trial Court Case No. CV26353**

---

## O P I N I O N

In this appeal, we consider whether the trial court erred in imposing sanctions against appellant and his attorney pursuant to Chapter 10 of the Civil Practices and Remedies Code. We vacate the trial court's order.

# BACKGROUND

## *The Real Estate Contracts*

Sometime before April 2006, plaintiff, Gordon Westergren, conceived an idea to develop a rail-served warehouse development named "Smart Crossing" in Baytown, Texas. In furtherance of this planned development, Westergren contracted with Johnny Glenn Jennings, Jr. to purchase two tracts of land in Chambers County. One contract was for the sale of a 603-acre tract at a purchase price of $4,522,500.00. William C. Rozelle acted as Jennings's trustee for the sale of this tract. The other contract was for the sale of a 120-acre tract at a purchase price of $1,950.000.00. This contract was contingent on Westergren's closing the 603-acre contract, for which Westergren had placed $25,000.00 with a title company as earnest money.

On August 30, 2007, Westergren, Jennings, and Rozelle, as Jennings's trustee, executed an amendment to the earnest-money contract, which required Westergren to pay an additional $75,000.00 in earnest money to either Jennings or Rozelle on the date that Westergren or his lawyer received amended title commitments from Rozelle. Upon receiving the additional title commitments, Westergren would have an additional sixty days to close on the 723 acres. It is undisputed that Westergren did not pay the additional earnest money when he received the title commitments. In this lawsuit, Westergren alleged that Rozelle

granted him an oral extension to pay the remaining earnest money, which Rozelle and Jennings subsequently refused to honor.

On December 19, 2007, Rozelle sent Westergren a letter stating that Westergren's contracts had terminated. Thereafter, Jennings sold the properties to NPH Ameriport, L.L.C., an entity in which Russell Plank and Michael Plank owned interests.

### The Harris County Lawsuit

On November 23, 2010, Westergren filed a lawsuit in Harris County against the Planks, Ameriport, and related entities. Jennings and Rozelle were not defendants in this litigation. The case was assigned to the 269th District Court because Westergren and the Planks had been involved in earlier litigation in 2008[1] in that court. Westergren nonsuited the Harris County litigation shortly thereafter.

### The Lunch Meeting Between Westergren and Jennings

On February 21, 2011, while the Harris County litigation was still pending, Westergren met Jennings for lunch. Jennings recorded the meeting, during which Westergren stated:

---

[1] In the 2008 litigation, Westergren sued the Planks and others for claims arising out of another land deal. A jury returned a verdict for Westergren, but the trial court granted a JNOV. On appeal, the appellate court reversed the JNOV, reinstated the jury's verdict, and remanded for a new trial on attorney's fees and court costs. The court also affirmed the take-nothing judgment by the Planks on their counterclaims against Westergren. *See Westergren v. Nat'l Prop. Holdings, L.P.*, 409 S.W. 3d 110 (Tex. App.—Houston [14th Dist.] June 28, 2013, pet. filed).

3

You know, over there on the 723 acres, I'm suing the [expletive] out of the [Planks]. And I need you to know, my lawyer said you got to sue Jennings. . . . I said I'm not going to sue Johnnie Jennings . . . because when he [Westergren's lawyer] ramped up the suit and it's a real estate deal, typically everyone gets sued . . . I said Johnnie didn't do nothing . . . Johnnie hadn't done nothing [expletive] wrong. Okay. Period. So I'm not doing it.

*The Underlying Chambers County Lawsuit*

Six weeks later, on April 7, 2011, Westergren filed another suit, this time in Chambers County. Unlike the Harris County suit, in this suit Westergren named Jennings and Rozelle as defendants. Westergren sued Jennings for breach of fiduciary duty and civil conspiracy. Westergren alleged that he had a joint venture to develop the property with the Planks, during which he revealed confidential information to them regarding his plans for the Smart Crossing project, which they, after professing to have no interest in the project, discussed with Jennings and Rozelle. Westergren also alleged that he told Jennings about his plans for the Smart Crossing project, which Jennings in turn discussed with the Planks. According to Westergren, after the Planks revealed these discussions with him to Jennings, Jennings then breached an oral agreement to further extend Westergren's time for closing, declared his contract with Westergren to be terminated, and then later sold the properties to the Planks, cutting Jennings out of the transaction. The Planks then, with Jennings and Rozelle as partners, began developing the property themselves in a manner consistent with his Smart Crossing plans.

4

*The Nonsuit and Subsequent Sanctions Motion*

After the Planks moved for summary judgment based on limitations, Westergren nonsuited the Chambers County lawsuit. Jennings then moved for sanctions against both Westergren and his attorney, Mark Sparks, under Rule 13 and Chapter 10 of the Civil Practices and Remedies Code.[2]  The trial court conducted a full evidentiary hearing.  At the close of the hearing, the trial court stated:

> The Courts finds that under Chapter 10, that there's no legal basis---there was no legal basis for the filing of the lawsuit against Mr. Jennings, no reasonable, legal basis.  However, I agree with Joe, although Joe got damn close to proving the attorney's fees, that there's no sworn or admitted testimony of the reasonable or necessary attorney's fees in this case on behalf of Mr. Jennings.
>
> So you have your finding that it was a baseless lawsuit, but I award no damages.  That's the ruling of the Court.  Y'all prepare an order and present it to me for signature.

Sparks and Westergren appeal the trial court's finding that they violated Chapter 10.

## JURISDICTION

The trial court found that Westergren and Sparks had violated Section 10.001 of the Civil Practices and Remedies Code, but nevertheless the court did not impose any monetary sanctions.  Because the trial court awarded no relief, we

---

[2]      A nonsuit does not affect a motion for sanctions made after or pending at the time of dismissal as long as the trial court's plenary power has not expired. *Crites v. Collins*, 284 S.W.3d 839, 842–43 (Tex. 2009).

5

consider whether the appeal presents a justiciable controversy, without which we have no jurisdiction. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) ("To constitute a justiciable controversy, there must exist a real and substantial controversy involving genuine conflict of tangible interest and not merely a theoretical dispute."). The issue presented is whether sanctions findings are reviewable even in the absence of actual sanctions.

This issue has not been addressed by Texas courts, but the federal courts provide guidance. In *Butler v. Biocore Medical Technologies, Inc.*, the Tenth Circuit described the various approaches taken by the federal courts—never appealable, always appealable, and appealable only if order is identified as a reprimand—as follows:

> The Seventh Circuit is the only circuit falling into the first category and considers an order only damaging an attorney's professional reputation as never appealable. *Clark Equip. Co. v. Lift Parts Mfg. Co., Inc.*, 972 F.2d 817, 820 (7th Cir. 1992) ("[A]n attorney may not appeal from an order that finds misconduct but does not result in monetary liability, despite the potential reputational effects."). In reaching its conclusion, the Seventh Circuit balanced the severity of the harm of damage to an attorney's professional reputation-characterizing it as a "speculative contingency" rather than a concrete injury, *id*.,-against the practical considerations of "congested appellate dockets and . . . the difficulty of assuring an adversary contest in most such appeals." *Id.* The result of this balancing test, the Seventh Circuit concluded, is that an order damaging only an attorney's professional reputation, while potentially a significant enough injury to satisfy the case or controversy requirements of Article III, is not a "final decision" for the purposes of § 1291 and, therefore, not appealable. *Id*.; *Bolte v. Home Ins. Co.*, 744 F.2d 572, 573 (7th Cir. 1984). The Seventh Circuit did, however, leave open the possibility that an

6

attorney damaged by an order finding misconduct alone could seek relief by a writ of mandamus. *Clark*, 972 F.2d at 820.

The Fifth and District of Columbia Circuits fall into the second category and both allow attorneys to appeal orders that find misconduct alone. *Walker v. City of Mesquite*, 129 F.3d 831, 832-33 (5th Cir. 1997) (holding that "the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability or other punishment as a requisite for the appeal of a court order finding professional misconduct"); *Sullivan v. Committee on Admissions and Grievances*, 395 F.2d 954, 956 (D.C. Cir. 1967) (holding that a finding of professional misconduct not accompanied by other sanctions is analogous to a defendant found guilty but given a suspended sentence and is appealable). The Ninth Circuit also falls into this category, though through a slightly different approach. It allows attorneys to appeal orders that are "inordinately injurious to a lawyer's reputation" but does not allow appeals from orders that are properly considered "routine judicial commentary." *United States v. Talao*, 222 F.3d 1133, 1137 (9th Cir. 2000). The Ninth Circuit, however, considers an order finding a knowing and willful violation of an ethical rule as, per se, "inordinately injurious" and, therefore, appealable. *Id.* at 1337–38. These circuits base their decisions primarily on how severe they consider an injury to an attorney's reputation. The Fifth Circuit, for example, held "beyond peradventure that one's professional reputation is a lawyer's most important and valuable asset." *Walker*, 129 F.3d at 832 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 412, 110 S. Ct. 2447, 110 L.Ed.2d 359 (1990) (Stevens, J., concurring)). Similarly, the Ninth Circuit noted that a finding of misconduct is "likely to stigmatize [the attorney] among her colleagues and potentially could have a serious detrimental effect on her career." *Talao*, 222 F.3d at 1138.

The First Circuit is the only circuit falling into the third category and is alone in adopting a formalistic approach that allows attorneys to appeal orders damaging their professional reputations only where the challenged order is "expressly identified as a reprimand." *In re Williams*, 156 F.3d 86, 92 (1st Cir. 1998). In reaching this conclusion, the First Circuit acknowledged that "a lawyer's professional reputation is his stock in trade, and blemishes may prove harmful in a

myriad of ways." *Id.* at 90. Nonetheless, the First Circuit limited the appealability of orders finding misconduct because of the difficulty in securing a "balanced adversarial presentation that is so helpful to the proper functioning of the appellate process" in such appeals, *id.* at 91, and the need for district courts to "retain the power to comment, sternly when necessary, on a lawyer's performance without wondering whether those comments will provoke an appeal." *Id.* at 92. The First Circuit made clear, however, that words alone could be sufficient if labeled as a reprimand. *Id.* Finally, like the Seventh Circuit, the First Circuit left open the possibility of relief through a writ of mandamus. *Id*. at 92–93.

348 F.3d 1163, 1167–68 (10th Cir. 2003). In following the Fifth, Ninth, and D.C. Circuits, the Tenth Circuit allowed an appeal of an order finding attorney misconduct, but not imposing sanctions nor labeled as a reprimand, holding that (1) "damage to an attorney's professional reputation is a cognizable and legally sufficient injury[,]" (2) the adversarial concerns are "assuaged by the fact that, on appeal, we review the district court's order—detailing the reasons for any finding of attorney misconduct—in addition to the appellant's brief[,]" and (3) a deferential standard of review would address concerns of excessive appellate supervision of the trial courts. *Id.* at 1169. In *Walker*, the Fifth Circuit held that "the importance of an attorney's professional reputation, and the imperative to defend it when necessary, obviates the need for a finding of monetary liability of other punishment as a requisite for the appeal of a court order finding professional misconduct." 129 F.3d at 832–33; *see also In re Fema Trailer Formaldehyde Prods. Liability*, 401 F. App'x 877, 880 n.3 (5th Cir. 2010) (holding that, like

8

finding of misconduct by attorney, trial court's finding of misconduct by expert witness appealable because court was "persuaded beyond peradventure that one's professional reputation is a lawyer's most important and valuable asset.") (quoting *Walker*, 129 F.3d at 832–33); *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) ("[A]n attorney's right to defend his or her professional reputation confers Article III jurisdiction for purposes of appeal.").

We follow the majority of the federal courts addressing the issue and hold that an order finding attorney misconduct, even without the imposition of sanctions, sufficiently presents a justiciable controversy to be addressed when challenged by the aggrieved attorney. Because Sparks and Westergren were found to have committed the same sanctionable conduct, we consider the order as it applies to both.

## PROPRIETY OF SANCTIONS ORDER

In their sole issue on appeal, Westergren and Sparks contend the trial court "abused its discretion in entering a[] sanctions order stating that Appellants Westergren and Sparks violated Chapter 10 of the Civil Practice & Remedies Code."

### Standard of Review

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *Taylor v. Taylor*,

9

254 S.W.3d 527, 532 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, and we reverse a trial court's ruling only if its action is arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838–39 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision." *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We make an independent inquiry of the entire record to determine whether the trial court abused its discretion in imposing the particular sanctions. *Scott Bader, Inc. v. Sandstone Prods.*, Inc., 248 S.W.3d 802, 812 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (citing *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)).

***Sanctions Under Chapter 10***

Section 10.001 of the Civil Practice and Remedies Code provides that the signing of a pleading constitutes a certification by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (Vernon 2002); *see also Mattox v. Grimes Cnty. Comm'rs Court*, 305 S.W.3d 375, 386 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Sanctions under chapter 10 of the Civil Practice and Remedies Code are authorized if the evidence establishes that (1) a pleading or motion was brought for an improper purpose, (2) there were no grounds for legal arguments advanced, or (3) a factual allegation or denial lacked evidentiary support."). The trial court may impose sanctions on a person who has signed a pleading in violation of section 10.001. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a). Chapter 10 authorizes sanctions if the suit was filed for an improper purpose, even if it was not frivolous. *See Alpert v. Grain, Caton & James, P.C.*, 178 S.W.3d 398, 412 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) ("[T]here

11

are two requirements under Chapter 10: (1) that the claims made in pleadings not be frivolous; and (2) that the pleadings not be made for an improper purpose. A finding of either requirement supports the imposition of sanctions."). "Generally, courts presume that pleadings and other papers are filed in good faith." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007). "The party seeking sanctions bears the burden of overcoming this presumption of good faith." *Id.*

### Section 10.001(1)—Improper Purpose

The trial court's sanctions order contained the following finding against Sparks:

> The Court further find that Sparks violated Section 10.001(1) of the Texas Civil Practice and Remedies Code by filing the instant lawsuit against Jennings for an improper purpose insofar as the suit was filed against Jennings *solely to obtain venue in Chambers County* without regard to the merits of the claims asserted against Jennings and to avoid what Sparks and his client perceived to be a less favorable forum in Harris County, Texas. . . . The Court finds that Jennings was included as a Defendant in the instant lawsuit solely to obtain venue in Chambers County by virtue of Jennings' residency in Chambers County and to avoid what Plaintiff perceived to be a less favorable forum in Harris County. Bringing a suit against Jennings solely to establish venue and without regard to the merits of the claim being asserted against Jennings is an improper motive for bringing suit. (Emphasis added).

The sanctions order contained an identical finding against Westergren.

However, Westergren's Original Petition, which included claims against Jennings, did not purport to establish venue based on Jennings' status as a resident of Chambers County. Rather, Westergren alleged that "all or a substantial part of

12

the events or omissions giving rise to the Plaintiff's claim occurred in Chambers County, Texas." He further alleged that the property in dispute was located in Chambers County, Texas. It was not until Westergren filed his Second Amended Original Petition on July 1, 2011, three months after the suit was initially filed, that he added a second ground for establishing venue in Chambers County, i.e., that "Defendant Johnnie Glen Jennings, Jr. is a resident of Chambers County, Texas and was a resident of Chambers County, Texas at the time the cause of action accrued." Therefore, at the time the suit was filed, venue was not based on Jennings's residency, and thus, the trial court could not have reasonably determined that Jennings was sued for the sole purpose of establishing venue in Chambers County.

### Section 10.001(2)—No Basis in Law

The trial court's sanctions order contained the following finding against Sparks, but not Westergren.

> Plaintiff's Original Petition, First Amended Petition, Second Amended Petition and Third Amended Petition asserted claims against Defendant Jennings for breach of fiduciary duty and civil conspiracy that were not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. In particular, Plaintiff alleged that a fiduciary and/or confidential relationship existed between Plaintiff and Jennings based on Plaintiff's alleged disclosure of confidential information to Jennings. Plaintiff's civil conspiracy claim against Jennings was based on an alleged oral promise to extend the above-mentioned amendment to the earnest money contracts and therefore set up the doctrine of promissory estoppel. **The Court finds**

13

*that there is no basis in law for a civil conspiracy claim based on promissory estoppel nor is there a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law under this theory. The Court further finds that there is no basis in law for the existence of a fiduciary and/or confidential relationship based on the disclosure of confidential information from one party to another nor is there a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law under this theory*. . . . The existing law with regard to breach of fiduciary duty and civil conspiracy is well-settled and would have been apparent to Sparks had he conducted a reasonable inquiry prior to filing suit against Jennings. Accordingly, the Court finds that Sparks failed to conduct a reasonable inquiry into the legal basis of Plaintiff's claims against Jennings before filing suit against Jennings.

## A. Fiduciary Duty

At the sanctions hearing and on appeal, Jennings argued that there was no basis in law for Westergren's breach of fiduciary duty claim against him. Specifically, Jennings argues that there was no relationship between him and Westergren apart from earnest-money contract. A contractual relationship between two parties, without more, cannot give rise to a fiduciary relationship between the contracting parties. *See Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984) (holding that fiduciary duty arises from relationship of parties, not contract between parties).

However, Westergren's live pleading at the time of the hearing provided the following in its section on breach of fiduciary duties:

Plaintiff and the Planks became partners in a partnership and/or joint venturers in a joint venture during the summer or early fall of 2004.

14

The partnership and/or joint venture was formed for the purpose of operating businesses for profit, with the partners as co-owners, and the principal business of the partnership and/or joint venture is developing and funding the purchase of various tracts of land for a rail-served warehouse parks [sic].

Defendants breached the duty of loyalty owed to Plaintiff under the law. Specifically, Plaintiff will show that Defendants diverted the partnership and/or joint venture in favor of their own personal interest or the interests of the various Ameriport Defendants, the limited liability companies named above, in which they have personal and/or fiduciary interests. The Ameriport Defendants also breached the duty of loyalty owed to Plaintiff by failing to disclose to Plaintiff facts that were material to the partnership's affairs, that is that they were going forward to develop the 723 acre rail served warehouse park in Chambers County, to the exclusion of Plaintiff who conceived it, designed it and contracted to acquire it.

In addition and/or alternatively, a confidential and fiduciary relationship existed between Plaintiff and Ameriport Defendants and the Conspiring Defendants, in that Plaintiff had revealed confidential and proprietary information to all of them, who breached the trust placed in them by disavowing any interest in the proposed project when in fact they intended to acquire and develop the project to the exclusion of Plaintiff.

While not a model of clarity, the petition sues Jennings as a "conspiring defendant" with the Planks and their related entities, who, according to the petition, were the parties with the fiduciary relationship to Westergren. Sparks testified at the sanctions hearing that, "The allegation is that Mr. Plank, the Planks were joint venturers with Mr. Westergren and that your client civilly conspired with him[.]" Partners in a partnership may owe particular duties to one another, as determined by their partnership agreement. *See* TEX. BUS. ORGS. CODE ANN. § 152.002

15

(Vernon 2012) (providing that partnership agreement governs the relations of partners); *see also id.* §152.205 (defining duty of loyalty owed by partners); §152.206 (defining duty of care owed by partners); *id.* §152.204(b) (providing for obligation of good faith by partners).

In Texas, some case authority exists to support the proposition that a party who knowingly participates in another's breach of fiduciary duty may be liable for the breach as a joint tortfeasor. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 138 Tex. 565, 574, 160 S.W.2d 509, 514 (1942); *Herider Farms-El Paso, Inc. v. Criswell,* 519 S.W.2d 473, 477 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.). Here, the duties alleged are those that partners in a partnership may owe to one another. Because there is some basis to assert the application of existing law to the alleged facts, Spark's claim, even if without merit, was a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2). Accordingly, the trial court erred in sanctioning Sparks based on his filing of the breach of fiduciary duty claim.

### B. Civil Conspiracy

At the sanctions hearing and on appeal, Jennings argued that there was no basis in law for Westergren's civil conspiracy claim against him. Specifically, Jennings argues "Sparks fails to base his civil conspiracy claim against Jennings on

16

an intentional tort[,]" and that promissory estoppel will not support a civil conspiracy claim. Westergren's pleadings alleged more than promissory estoppel:

> Pleading in the alternative, Plaintiff would show a conspiracy to commit an unlawful act between the Ameriport Defendants and the Conspiring Defendants (Rozelle and Jennings). All Defendants had a meeting of the minds to accomplish their illicit and intentionally fraudulent objective, and the intentional actions and omissions of each Defendant constitute one more unlawful, overt acts. All of these Defendants entered into a civil conspiracy and intentionally made misrepresentations to Plaintiff. For example, the Conspiring Defendants promised verbally to extend the Westergren contracts, thereby setting up the doctrine of promissory estoppel, when they had no intention of fulfilling their promises to Plaintiff.

> At such time as Defendant, Russell Plank (as the authorized agent of the Ameriport Defendants), came to the Conspiring Defendants with an offer of more money for the acreage in question that was then under purchase contracts by Plaintiff, all of the parties Defendant conspired to reneg upon and terminate the Westergren contracts, rather than extend them—since those contracts were for a substantially less purchase price.

As made clear by the pleadings and Sparks's testimony at the sanctions hearing, Westergren's civil conspiracy was not merely founded on promissory estoppel, but included claims that the Jennings fraudulently misrepresented to Westergren that he had an extension on the earnest-money contract so that the contract would expire, thereby giving Jennings an opportunity to then sell the property to the Planks and to become a partner in their subsequent development. Thus, fraud, though not alleged as a separate cause of action, is the underlying tort alleged for Westergren's civil conspiracy claim. *See Crim Truck & Tractor Co. v. Navistar*

*Int'l Transp. Co*, 823 S.W.2d 591, 597 (Tex. 1992) (recognizing claim for fraudulent inducement to enter into an agreement).

Because Sparks alleged that Jennings was potentially liable for making a fraudulent misrepresentation to him to induce the expiration of the earnest-money contract, the civil conspiracy claim asserted an underlying intentional tort, and thus was a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001(2).

### Section 10.001(3)—No Basis in Fact

The trial court's sanctions order contained the following finding against Sparks;

> The Court further finds that Sparks violated Section 10.001(3) of Chapter 10 of the Civil Practice and Remedies Code by making allegations and factual contentions that no evidentiary support and were never likely to have evidentiary support. Concurrent with the filing of his Original Petition, Plaintiff served Jennings with eighteen (18) interrogatories and fifty-eight (58) requests for production. There was no evidence in Jennings' responses to Plaintiff's written discovery that supported Plaintiff's claims against Jennings for breach of fiduciary duty and civil conspiracy. Included in Jennings' discovery responses was a transcript of a recorded conversation between Plaintiff and Jennings that occurred on or about February 21, 2011—before Plaintiff filed his Original Petition. According to the transcript of the recording, Plaintiff stated that Jennings had done "nothing wrong" in connection with the 723 acres but that he was nevertheless suing Jennings because "in a real estate deal . . . typically everyone gets sued." Based on Jennings' discovery responses, there was no evidentiary support for the following allegations and factual contentions pled in Plaintiff's petitions: (1)

18

that a partnership and/or joint-venture relationship existed between Plaintiff and Jennings with respect to the 723 acres or Plaintiff's alleged development plans for the 723 acres; (2) that Jennings verbally agreed to extend Plaintiff's deadline for closing on the 723 acres; (3) that Jennings conspired with his Co-Defendants to sell the 723 acres to Co-Defendants Michael Plank, Russell Plank and related entities and not to Westergren; and (4) that Jennings, individually and in concert with his Co-Defendants, unlawfully obtained and used for his own benefit Plaintiff's confidential ideas, drawings, and land contracts. Sparks persisted in pleading these allegations and factual contentions in Plaintiff's First, Second, and Third Amended Petition despite the absence of any evidentiary support. The Court further finds that Sparks failed to conduct a reasonable inquiry into the factual basis of Plaintiff's claims against Jennings before filing any of Plaintiff's petitions.

The sanctions order contained an identical finding against Westergren. We address each of the four topics upon which the trial court found no evidentiary support, respectively.

### A. *No evidence of partnership or joint venture between Westergren and Jennings*

The trial court found no evidentiary support "that a partnership and/or joint-venture relationship existed between Plaintiff and Jennings with respect to the 723 acres or Plaintiff's alleged development plans for the 723 acres." Because Westergren contended, however, that there was a partnership or joint venture between Westergren and the Planks, and that Jennings allegedly conspired with the Planks to breach fiduciary duties arising out of that partnership, the factual basis as pleaded is not wholly refuted by the failure to plead a fiduciary relationship between Jennings and Westergren.

19

## B. *Jennings verbally agreed to extend the closing deadline on the 723 acres*

The trial court found no evidentiary support for the allegation that "Jennings verbally agreed to extend Plaintiff's deadline for closing on the 723 acres." However, at the sanctions hearing, Westergren testified that "I have verbal extensions and a whole lot of work put into this, a lot of money into it, in the due diligence period." During questioning at the sanctions hearing, Sparks was asked, "[B]ut you have no evidence other than your clients claim that my client made an oral promise to support that?" Sparks replied, "That is evidence. My client's testimony is evidence."

We agree with Spark's assessment. Westergren's own testimony provides a factual basis for his claim that he was granted an oral extension on the closing date.

## C. *Jennings conspired with the Planks and unlawfully obtained and used Westergren's ideas and drawings*

The trial court found no evidentiary support for the allegation that "Jennings conspired with his Co-Defendants to sell the 723 acres to Co-Defendants Michael Plank, Russell Plank and related entities and not to Westergren"; and "that Jennings, individually and in concert with his Co-Defendants, unlawfully obtained and used for his own benefit Plaintiff's confidential ideas, drawings, and land contracts."

Westergren responds that he did not need to provide evidence of an actual meeting between Jennings and the Planks to show a conspiracy to cut him out of the real estate deal and use his plans and drawing to proceed without him. Instead, he argues that he can use circumstantial evidence to show such a conspiracy.

We agree that a conspiracy may be established by proof of facts and circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of the common design, intention, or purpose of the alleged conspirators. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963). Further, inferences may be drawn from joint participation in the transactions and from enjoyments of the fruits of the transactions on the part of the defendants. *Id.* at 582.

At the sanctions hearing, Westergren testified that, at first he believed that Jennings had done nothing wrong, but he later changed his mind when he learned that Jennings was actually a partner in the development that was planned after he sold the properties to the Planks. As Westergren testified, "I didn't have a problem until I found out that [Jennings] was a partner in the project [with the Planks] and took all of my work and shared it with the people he sold the land to and partnered with." In response to Interrogatories, Westergren stated:

> [P]laintiff responds that even while Plaintiff's existing contracts
> were in effect, the Seller admitted to Plaintiff and other that Russell
> Plank had contacted them, letting them know of Defendants' interest
> in the property and of their own superior financial abilities to

21

> conclude a sale. When the sellers suddenly became very uncooperative and refused to communicate, later declaring Plaintiff's contracts void, Defendants had actually purchased the property to which they claimed no interest and began a mirror image development project.
>
> . . . .
>
> It is patently obvious from the Defendants' acquisition of the land which Plaintiff had under contract, including concept diagrams disclosed to them by Plaintiff that the layout and design of the Ameriport project mirrors Plaintiff's drawings that the Defendants have converted property and ideas belonging to others for their own benefit and enrichment.

And, Westergren testified at the sanctions hearing about sharing his plans for the "Smart Crossing" project with Jennings as follows:

> So [Jennings], and who I shared in confidence a lot of information, a lot of due diligence, wetlands assessments, strategic—the property was riddled with pipelines. It was a—it was a strategic nightmare to develop. I hired engineers, professional engineers. We worked long and hard and spent a lot of money determining how to put the rail into this property and make it a viable investment. So spent many hours with [Jennings].

Put simply, Westergren relies on the following circumstances to show a factual basis for his conspiracy claim: (1) he shared his plans for the development with Jennings, (2) Jennings told Westergren that he had been contacted by the Planks while the earnest-money contracts were pending, (3) Jennings became uncooperative and refused to comply with an alleged oral extension, (4) Jennings declared the earnest-money contracts void, (5) Jennings sold the land to the Planks, (6) Westergren found out that Jennings was a partner in the Planks' subsequent

22

development, and (7) the subsequent development was a "mirror image" of the plans Westergren had shown Jennings.

While no one piece of this evidence (and indeed perhaps not even the totality of it) shows a conspiracy to use Westergren's plans and cut him out of the development, Westergren argues, and we agree, that these circumstances and the potential inferences arising therefrom provide a sufficient factual basis for his allegation of a conspiracy. Whether a factfinder would choose to believe this evidence is, of course, another matter.

## CONCLUSION

Because we have held that (1) the trial court could not have reasonably determined that Jennings was sued for the sole purpose of establishing venue in Chambers County, (2) there is some basis to assert a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law for Westergren's breach of fiduciary duty and civil conspiracy claims, and (3) there was a sufficient factual basis to support his claims, we vacate the trial court's sanctions order.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

23