**Opinion issued July 31, 2017**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00656-CV

———————————

**HASSAN CHAHADEH, Appellant**

**V.**

**REGIONS BANK, Appellee**

---

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Case No. 2012-67412A**

---

## MEMORANDUM OPINION

Appellant, Hassan Chahadeh, challenges the trial court's summary judgment

in favor of appellee, Regions Bank ("Regions"), on its claim for breach of contract

and Chahadeh's counterclaim against it for fraud, aiding and abetting a breach of

fiduciary duty, and a declaratory judgment. In three issues, Chahadeh contends

that the trial court erred in granting Regions summary judgment, denying his motion to reconsider, and severing his third-party claim against Kamran Nezami.

We affirm.

## Background

In its Original Petition, Regions brought a breach-of-contract claim against Chahadeh as guarantor of a loan that Regions extended to CN Investors, LLC ("CN Investors"), a company composed of Chahadeh and Nezami, alleging in pertinent part, as follows:

> By failing and refusing to make payments due and owing to Regions, CN Investors defaulted under the terms of the Loan Documents and Chahadeh defaulted under the terms of his Commercial Guaranty. As a proximate result of CN Investors' and Chahadeh's breaches of their contractual obligations, Regions suffered damages, including but not limited to the amounts of unpaid principal, accrued interest and attorneys' fees due it under the Loan Documents and Commercial Guaranty.

In his "First Amended Counterclaims," Chahadeh alleged that the loan was really a home equity loan for Nezami's homestead, Regions had "fraudulently disguised and structured the [home equity] loan as a business loan," and Regions had obtained "the guaranty of Chahadeh on such basis." And when the loan was renewed, "Regions continued to disguise the Loan as a business loan." Chahadeh sought damages, alleging that Regions had aided and abetted a breach of fiduciary duty owed to him by Nezami, after Nezami had "abandoned" his homestead, allowing "it to deteriorate," and renounced his homestead claim. And he requested

2

a judgment declaring that his obligation resulted from a void guaranty on a constitutionally-protected home equity loan.

In its Second Amended Traditional and No-evidence Motion for Summary Judgment against Chahadeh, Regions argued that it was entitled to summary judgment on its breach-of-contract claim against Chahadeh because it, as a matter of law, established (1) the execution of the note and guaranty, (2) Chahadeh signed the guaranty, (3) Regions legally owned the guaranty, and (4) a certain balance remained due and owing.[1] Regions further argued that it was entitled to summary judgment on Chahadeh's counterclaim against it for fraud and aiding and abetting a breach of fiduciary duty because the loan was a business loan, not a home equity loan; Chahadeh released all of his counterclaims; he is estopped from asserting that the loan was a "disguised home equity loan"; he ratified the business loan agreement and his commercial guaranty when he executed the guaranty agreements; and his claims are barred by limitations. Regions further asserted that there is no evidence that the loan was a home equity loan, it made a fraudulent agreement, or it aided and abetted any breach of fiduciary duty.

Regions attached to its motion the affidavit of Thomas Bacarella, a Regions vice-president. Bacarella testified that on September 12, 2006, Chahadeh executed a "Commercial Guaranty," guaranteeing CN Investor's repayment of a loan in the

---

[1] *See Vaughn v. DAP Fin. Services, Inc.*, 982 S.W.2d 1, 4 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

amount of $1,537,500.00 for the purchase of real property located at 702 Crestbend Drive (the "property").[2] Further, on September 12, 2007, when the loan was renewed for an additional $348,687.00, for a total principal amount of $1,886,187.00, Chahadeh again executed a "Commercial Guaranty." According to Bacarella, the maturity date of CN Investors' total indebtedness to Regions was extended to July 19, 2008. He further testified, that "[e]ffective July 19, 2008," CN Investors entered into a "First Amendment to Business Loan Agreement" and "Note Modification Agreement" with Regions, "extend[ing] the maturity date of [CN Investors'] indebtedness to Regions to July 19, 2009."

Also attached to Regions' Second Amended Summary Judgment Motion are copies of each "Commercial Guaranty," each of which provides, "Guarantor will make any payments to lender or its order, on demand, . . ." And the subsequent guarantor's waivers section in each does not require Regions to pursue other remedies before invoking the guaranty:

> Except as prohibited by applicable law, Guarantor waives any right to require Lender . . . (B) to make any presentment, demand or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of the Borrower, Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loan or obligations. (C) to resort for payment or proceed to directly or at once against any person, including the Borrower or any other guarantor; (D) to proceed

---

[2] Nezami and Chahadeh also signed the original loan on CN Investors' behalf as co-managers of the LLC.

directly against or exhaust any collateral held by the Lender from Borrower, any other guarantor, or any other person; . . . (F) to pursue any other remedy within Lender's Power . . . ."

In his affidavit, Bacarella explained that the parties, in September 2006 and 2007, also executed a "Disbursement Request and Authorization" form, each noting that the primary purpose of the loan was for "Business, Agricultural and Alt. Other." However, the specific purpose of the 2006 disbursement was "Comm'l-Short Term," and the specific purpose of the 2007 disbursement was "Residential 1-4 Family."

Bacarella further explained that CN Investors made the majority of its loan payments, but missed a payment on October 29, 2008, for which Regions accepted late payment in December 2008. CN Investors' note matured on July 19, 2009. And CN Investors continued to make payments through October 29, 2009, but it did not pay all of the remaining principal and accrued interest due upon the note's maturity.

On September 3, 2010, Regions demanded that CN Investors pay the note and Chahadeh pay the guaranty by September 13, 2010. After neither CN Investors nor Chahadeh paid the remaining balance, "Regions posted the Property for foreclosure." CN Investors and Nezami, alleging that the property was Nezami's "homestead," filed a verified petition against Regions to stop the foreclosure. The parties then entered into the final settlement agreement, which is

5

attached to Bacarella's affidavit, in which Nezami recanted his homestead claim, in pertinent part, as follows:

> CN and NEZAMI, jointly and severally, RENOUNCE, GIVE UP, RELEASE, AND ABANDON (a) any and all claims and assertions that the Property is or ever has been the homestead of Nezami . . . and (b) any and all claims and assertions that the Loan . . . is or ever has been a home equity loan, disguised or otherwise, and represent and warrant that it has never been so at any time.

Pursuant to an agreement with Regions, CN Investors then sold the property. And the proceeds of the sale were credited against the principal balance, reducing the principal amount due on the note to $673,307.24.

In his response to Regions' Second Amended Summary Judgment Motion, Chahadeh argued that Regions was not entitled to judgment as a matter of law because the Texas Administrative Code bars a guaranty on a home equity loan; Nezami did not need to hold title to the property for it to be his homestead; Chahadeh did not waive, did not release, and is not estopped from asserting his affirmative defenses; and Regions' claim is bared by limitations. He further asserted that Regions may not recover a "deficiency judgment" from him and he did not lack standing to assert that the property was Nezami's homestead. Chahadeh also argued that Regions' summary-judgment motion on his counterclaims should be denied because there is evidence to support each counterclaim.

6

In support of his counterclaims, Chahadeh attached to his response: CN Investors and Nezami's verified original petition in which they asserted that the property was Nezami's homestead; Chahadeh's affidavit in which he indicated his "information and belief" that Regions had coerced Nezami to renounce his homestead and to allow a deficiency against CN Investors; Nezami's admissions in the instant suit, indicating that the property was Nezami's homestead; the Harris County Appraisal District's records, describing the property as "Residential, Single-Family," but also noting "Exemption Type: None," instead of "Homestead"; and a Cadmus Environmental "Mold Inspection Report," describing mold growth and "damage to sheetrock" at the property.

Relying on this evidence, Chahadeh asserted that the property was Nezami's "homestead" and he had "breached his [fiduciary] duty" to Chahadeh and CN Investors when he "abandoned" it "for two years . . . without air conditioning," resulting in "mold" and "leak conditions caus[ing] damage to sheetrock." Regions, in writing, timely objected to Chahadeh's evidence.

Without specifying the reasons for its decision, the trial court granted summary judgment for Regions, but it did not specifically rule on Regions' objections to Chahadeh's summary-judgment evidence. Chahadeh filed a motion, asking the trial court to reconsider its summary-judgment ruling, and he attached a draft settlement between Nezami, CN Investors, and Regions, wherein the denial

7

of the property's homestead character was struck with the following handwritten notation, as follows:

> CN and NEZAMI, jointly and severally, acknowledge, admit, agree, and confirm that the Property has ~~never~~ been ~~at any time or under any circumstances~~ the homestead of Nezami . . . .  However, the Property has never been the homestead of Chahadeh . . . and it is no longer the intention that the property be the homestead of any member of the Nezami Family . . . and has not been at any time or in any respect under any circumstances, a home equity loan disguised or otherwise.

> [We can't say this]

Regions did not object to the draft settlement document.

Regions then moved to sever Chahadeh's third-party action against Nezami, to which Chahadeh responded.  The trial court denied Chahadeh's motion to reconsider and granted Regions' motion to sever, making the judgment against Chahadeh final.

### Summary Judgment

In his first issue, Chahadeh argues that the trial court erred in granting Regions summary judgment because (1) "the statute of limitations . . . barred Regions' breach of contract claim" and, alternatively, "Chahadeh raised fact issues . . . and thereby precluded the granting of Regions' motion for summary judgment"; (2) "there was clearly evidence before" the trial court "to raise fact issues as to Regions' liability" as to his counterclaim against Regions for aiding and abetting "Nezami's breach of his fiduciary duty" to him; and (3) "the invalidity of a guaranty on a home equity loan" in Texas "barred Regions' breach of contract

8

claim" and supported his declaratory-judgment counterclaim. Chahadeh does not challenge the trial court's summary judgment decision as to his fraud claim.

***Standard of Review***

We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Provident Life & Accident Ins.*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

A movant for a matter-of-law summary judgment has the burden of establishing that it is entitled to judgment as a matter of law and there is no genuine issue of material fact. TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action.

9

*Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995); *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *Siegler*, 899 S.W.2d at 197; *Transcon. Ins. Co. v. Briggs Equip. Trust*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755–56 (Tex. 2007).

### *Limitations*

Chahadeh first asserts that limitations on "a suit on a guaranty begins to run upon default when the requirement of notice to the guarantor is waived . . . [allowing Regions] to seek judicial remedy without demand," and, here, "the statute of limitations on a suit on [the] guaranty [began] to run . . . as soon as [CN Investors]" missed a "payment . . . on the Note."[3] He argues that because the first missed payment occurred in October of 2008 and Regions did not file suit until

---

[3]    We note that Chahadeh also argues that Regions was precluded from presenting any evidence on this issue because it only argued against the issue in its reply to Chahadeh's response to Regions' summary-judgment motion. Regions correctly responded that it was not required to address the affirmative defense until raised. And it attached all evidence relevant to the issue to its motion. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

10

November of 2012, "Regions' claims are barred by the four-year statute of limitations." Alternatively, Chahadeh asserts that the guaranty is ambiguous as to whether the "missed payment" or subsequent "demand for payment" triggered Regions' cause of action and he raised a fact issue precluding summary judgment. Regions argues that because "limitations began to run" from the date "Chahadeh did not pay" in response to a demand for payment, its breach-of-contract claim was not barred.

A person must bring suit on a debt no later than four years after the date the cause of action accrues. TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3) (Vernon 2002). A cause of action for breach of a promise to pay arises when a demand for payment has been made and refused, unless demand was waived or unreasonably delayed. *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 6 (Tex. App.—Dallas 1994, no writ) (citing *Intermedics, Inc. v. Grady*, 683 S.W.2d 842, 845 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.)); *accord Yamin v. Conn, L.P.*, No. 14-10-00597-CV, 2011 WL 4031218, at *4, 6 (Tex. App.—Houston [14th Dist.] Sept. 13, 2011, no pet.) (mem. op.). Where a guarantor can be sued without first suing the principal, the statute of limitations on the principal does not generally affect the guarantor's statute of limitations. *Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 WL 3485970, at *5 (Tex. App.—Houston [1st Dist.] June 2, 2015, pet. denied) (mem. op.).

11

"When construing a guaranty agreement, our primary goal is to ascertain and give effect to the parties' intent." *Chahadeh v. Jacinto Med. Group, P.A.*, 519 S.W.3d 242, 247 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The best guide to the parties' intent is the language of the guaranty, and where the language is clear and unambiguous, we may not look outside of that document to give it a different construction. *See id.*

Here, the opening paragraph of the "Commercial Guaranty" provides, "Guarantor will make any payments to lender or its order, on demand . . . ." And the guarantor's waivers section did not require Regions to pursue other remedies before invoking the guaranty. On September 3, 2010, Regions demanded that Chahadeh, as guarantor, pay the unpaid balance of the loan by September 13, 2010. However, Chahadeh did not comply.[4]

To determine the correct date of accrual of Regions' cause of action, we consider the plain language of the guaranty agreement. *See Yamin*, 2011 WL 4031218, at *5. In *Yamin*, the court considered the accrual date of a guarantor's obligation to pay after a tenant defaulted on a lease. *Id.* The guaranty agreement

---

[4] Because the guaranty authorized Regions to demand payment from Chahadeh without first making demand on CN Investors, we need not address the statute of limitations as to CN Investors, the principal. *Berry v. Encore Bank*, No. 01-14-00246-CV, 2015 WL 3485970, at *5 (Tex. App.—Houston [1st Dist.] June 2, 2015, pet. denied) (mem. op.); *see also Chahadeh v. Jacinto Med. Group, P.A.*, 519 S.W.3d 242, 247 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (distinguishing between conditional and unconditional guaranties).

12

included the following language: "Guarantor hereby unconditionally, irrevocably and absolutely guarantees to Landlord *without demand* the prompt and full payment and performance, when due, of all obligations and covenants." *Id.* The court interpreted the demand as "acting solely on the guarantor's promise to pay," not the landlord's right to relief. *Id.* Thus, the landlord was required to issue a demand before suing the guarantor. *Id.*

Chahadeh argues that because he, in the guaranty agreement, waived any demand from Regions and thus Regions was not required to make any demand on him before filing suit, CN Investors' payment default itself triggered the running of the statute of limitations. Chahadeh quotes, in pertinent part, the following language from the guaranty agreement:

> Except as prohibited by applicable law, Guarantor waives any right to require Lender . . . (b) to make any presentment, demand or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of the Borrower, Lender, any surety, endorser, or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loan or obligations.

As in the agreement in *Yamin*, this provision did not negate Regions' requirement to demand payment from Chahadeh. Looking to the plain language of the pertinent provisions, Chahadeh's promise to pay "on demand" required Regions to make a demand for payment.

Thus, as suggested by Regions, the statute of limitations ran from the date that Chahadeh did not pay in response to Regions' September 13, 2010 demand for payment. *See Wiman*, 877 S.W.2d 5. Regions filed suit against Chahadeh on November 13, 2012, well within the four-year limitations period. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(3). Accordingly, we hold that the statute of limitations does not bar Regions' breach-of-contract claim against Chahadeh.

### *Aiding and Abetting*

Chahadeh next asserts that Regions aided and abetted Nezami in his breach of fiduciary duty to Chahadeh by allowing the property to "mold" after Nezami "abandoned" and "failed to maintain the Property." Chahadeh argues that he only "became liable for the deficiency due under the loan" because Regions "conspired [with Nezami] to settle the original lawsuit" against CN Investors and Nezami, including a "renouncement [of] the claim that the Property was [Nezami's] homestead."

In response, Regions asserts that Chahadeh presented "no evidence" in support of his "aiding and abetting" counterclaim and, regardless, it was solely "pursuing collection of its loan, a legitimate business purpose." Regions also asserts that Chahadeh's guaranty gave Regions the right to collect the "entire indebtedness" from Chahadeh without looking to the "borrower," "the collateral," or "to any other guarantor (Nezami) for payment."

14

No general duty exists between members of a limited liability corporation ("LLC"), but a manager of an LLC may owe a duty to the corporation and its members as defined in the agreement establishing the LLC. *See* TEX. BUS. ORGS. CODE ANN. § 7.001 (Vernon Supp. 2016) & 101.401 (Vernon 2012) (allowing corporations to limit or eliminate some liability); *Strebel v. Wimberly*, 371 S.W.3d 267, 277–78 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (recognizing LLC agreement created fiduciary duty).

In Texas, some case authority exists to support the proposition that a party who knowingly participates in a breach of fiduciary duty for its own benefit may be liable for the breach as a joint tortfeasor. *Westergren v. Jennings*, 441 S.W.3d 670, 680 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Kinzbach Tool Co. v. Corbett–Wallace Corp.*, 160 S.W.2d 509, 514 (1942)).

To rebut Regions' no-evidence summary-judgment motion, however, Chahadeh was required to direct the trial court to some evidence to support each element of his counterclaim that Regions aided and abetted a breach of fiduciary duty. *See Siegler*, 899 S.W.2d at 197; *Transcon. Ins.*, 321 S.W.3d at 691. Chahadeh argues that Regions knew that a "fiduciary duty" existed between Nezami and himself because it knew the two "were co-members" and Nezami was a "manager of CN [Investors]," "as evidenced by the Loan documents" and the later settlement documents. He asserts that Nezami breached his fiduciary duty to

15

him when he left the property "unoccupied for two years and without air conditioning," resulting in "mold" and "sheetrock" "leak" damage. Nezami also breached his fiduciary duty to CN Investors when he "disclaimed" his "homestead" protections against Regions in CN Investors' settlement with Regions. According to Chahadeh, "Regions conspired with Nezami to get Nezami to recant his claims of a homestead in exchange for a release of personal liability and obtain a judgment against [CN Investors] and settle to the exclusion of Chahadeh."

No claim for breach of fiduciary duty can arise out of an arm's-length business transaction. *See KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 86 (Tex. 2015) (concluding "almost any bargained-for commercial exchange might be construed as benefitting one party at the expense of another."). And, as noted above, Regions need not have pursued foreclosure or settlement with Nezami before invoking the guaranty according to its plain language:

> Except as prohibited by applicable law, Guarantor waives any right to require Lender . . . (C) to resort for payment or proceed to directly or at once against any person, including the Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by the Lender from Borrower, any other guarantor, or any other person; . . . (F) to pursue any other remedy within Lender's Power . . . .

Simply put, because Chahadeh could not, as a matter of law, assert a cause of action against Regions for a breach of fiduciary duty, he could not assert a

16

counterclaim against Regions for aiding and abetting such a breach. And he failed to present any evidence to establish the contrary.

Accordingly, we conclude that Chahadeh presented no evidence to establish that Regions aided and abetted a breach of fiduciary duty by Nezami.

*Homestead*

Chahadeh next asserts that the guaranty involves a home equity loan, and thus is void as a matter of law under "Article 16, Section 50(a)(6) of the Texas Constitution." *See* TEX. CONST. XVI, § 50(a)(6). Further, "at a minimum," there is a fact issue as to whether the property was Nezami's homestead, which "barred Regions' breach of contract claim" and supports his counterclaim for declaratory judgment. Regions argues that the guaranty is constitutional because "the Loan was a commercial loan to a Texas limited liability company" that "pledged [the property] as collateral for the Loan, the primary purpose of which was for business."

It is well-established that a party is bound by the terms of his own contract until it is annulled by fraud, accident, or mistake. *See Mathews v. Sun Oil Co.*, 411 S.W.2d 561, 564 (Tex. Civ. App.–Amarillo 1966), *aff'd*, 425 S.W.2d 330 (Tex. 1968); *Dyer v. Cotton*, 333 S.W.3d 703, 718 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Generally, parol evidence is inadmissible to vary or contradict the terms," but is admissible "to demonstrate that, through fraud, accident, or mutual

17

mistake, the deed does not reflect the parties' true intentions."). Chahadeh does not maintain his fraud claim on appeal. Therefore, we interpret the contract according to the plain meaning of its terms. *Nat'l Union Fire Ins. Co. v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008) (holding every contract interpreted in whole and in accordance with plain meaning of its terms).

The parties do not disagree that the instant loan is, on its face, a commercial loan made from Regions Bank to CN Investors for the business purpose of purchasing property. And the evidence supports this conclusion. The initial and subsequent loan agreements refer to "Business Loan" agreements between "CN Investors, LLC" as "Borrower" and "REGIONS BANK" as "Lender," and the agreements concern "commercial" loans. Chahadeh does not dispute that the contracts are commercial contracts on their face, but instead, he asserts that Regions "disguised the loan to be a business loan when it was in fact for the personal residence of Nezami." Although he makes broad assertions, he does not direct us to any language within the documents that show the loan was a home equity loan.[5] Because the loan is a commercial loan on its face and Chahadeh

---

[5] Although the stated purpose of the 2007 disbursement was "Residential 1-4 Family," Chahadeh mentions this fact only in his reply brief under the heading of whether he waived, released, or was estopped from asserting that the commercial guaranty is void as a matter of law. "An issue raised for the first time in a reply brief is ordinarily waived and need not be considered by this Court." *McAlester Fuel Co. v. Smith Intern., Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Also, the stated original purpose of the 2006

abandoned his fraud claim, we conclude that his guaranty is not void as a matter of law. Accordingly, we hold that the trial court did not err in granting Regions' summary judgment. *See Crocker*, 246 S.W.3d at 606 (Tex. 2008); *see also Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 551 (Tex. 2016) (limiting declaratory judgment actions in the context of home equity loans).

We overrule Chahadeh's first issue.

## Motion to Reconsider Evidence

In his second issue, Chahadeh argues that the trial court erred in denying his "Motion to Reconsider Ruling on Regions' Second Amended Motion for Summary Judgment" "[f]or the same reasons" that he asserted in his first issue. Having overruled his first issue, we overrule his second issue.

## Severance

In his third issue, Chahadeh argues that the trial court erred in severing his counterclaim against Regions for aiding and abetting Nezami from his claim for breach of fiduciary duty against Nezami because the two claims involve the same facts and issues and are "so inextricably interwoven and []resulted in an indivisible injury." He asserts that "a claim is only properly severable if: . . . the severed claim is not so interwoven with the remaining action that they involve the same

---

disbursement was "Comm'l-Short Term." In both forms, the primary purpose of the loan was for "Business, Agricultural and All Other," not "Personal, Family or Household Purposes."

19

facts and issues." *See In re Henry*, 388 S.W.3d 719, 726 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding).

We will not disturb a trial court's broad discretion to sever cases absent an abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990); *In re Henry*, 388 S.W.3d at 726. And a trial court may sever a summary judgment so that it becomes final and appealable. TEX. R. CIV. P. 41; s*ee, e.g.*, *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 525 (Tex. 1982) (holding no abuse where trial court severed reformation claim from declaratory-judgment action); *Pilgrim Enters., Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 491–92 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (duty-to-defend claims properly severed from remaining claims).

Having concluded that the "facts" do not support Chahadeh's "issue" regarding his counterclaim against Regions for aiding and abetting Nezami, we need not examine whether they are inextricably interwoven with his claim for breach of fiduciary duty against Regions or resulted in an indivisible injury. As explained above, the trial court did not err in granting summary judgment on Chahadeh's counterclaim against Regions for aiding and abetting Nezami.

Because the summary judgment disposed of all claims between Regions and Chahadeh, we hold that the trial court did not err in severing Chahadeh's

20

counterclaim against Regions from his claim for breach of fiduciary duty against

Nezami. *See In re Henry*, 388 S.W.3d at 726

We overrule Chahadeh's third issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.